WILBUR S. CONKLING, Appellee, v. THE STANDARD OIL COMPANY, Appellant.

**Contracts:** BREACH: PLEADINGS. A petition which fairly states a
·1  cause of action founded upon contract should not be condemned as fatally deficient because the pleader, in drawing his conclusions, also stated matter indicating that defendant's wrong consisted in the making of a false representation.

**Appeal:** QUESTIONS NOT RAISED BELOW. The appellate court will deter-
2  mine a cause on the theory on which it was tried in the court below, although the point is not made by counsel; as when the issue of an express warranty is tried and determined without objection in the trial court, it cannot be contended on appeal that such issue was not in the case.

**Sales:** WARRANTY: EVIDENCE. On the question of an express war-
3  ranty in the sale of goods, evidence that just prior to the sale a third person at the request and in the presence of plaintiff telephoned defendant's place of business, and was assured by a clerk in charge of the telephone business that the goods were suitable for the purpose desired, is admissible.

**Evidence:** COMMUNICATIONS BY TELEPHONE. Telephone communica-
4  tions are receivable in evidence when the conversation is other-

wise admissible, although the witness cannot positively identify the person with whom he was talking, the weight of the evidence being a question for the jury.

**Same.** A warranty arises where there is a distinct assertion respecting the quality of goods, or their adaptability to the purpose for which they are desired, which is relied upon; and the warranty may rest in parol, no particular form of words being required to create it. Evidence held to show a parol warranty that oil sold for cooling automobiles was adapted to and suitable for that purpose.

**Sales:** AUTHORITY OF AGENTS: REPRESENTATIONS AS TO QUALITY OF GOODS. An agent is presumed to have power to do that which is usual and necessary to accomplish the object for which the agency exists; as where the manufacturer of a certain oil employs agents to assist in the sale of the same, concerning the quality and fitness for the purpose desired the purchaser has no knowledge but must rely on the seller's representations and those acting for him, the agency carries with it power to warrant its adaptability to the use for which it is sold.

**Implied warranty:** SUBMISSION OF ISSUE. Where the petition pleads an implied as well as an express warranty in the sale of goods, which is denied in the answer, and the circumstances give rise to a warranty by implication, that issue should be submitted and considered by the jury, as well as the question of express warranty.

**Same:** *Caveat emptor.* Where a manufacturer sells an article of his own production for a certain purpose, upon whose judgment and statements as to its adaptability the purchaser must rely, there is an implied warranty that the article is reasonably fit for the purpose for which it is sold; and the doctrine of *caveat emptor* has no application.

**Verdict:** CONCLUSIVENESS. The finding of a jury which has support in the evidence will not be disturbed.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

TUESDAY, JUNE 9, 1908.

ACTION at law to recover damages. The opinion states the case. Plaintiff had a verdict and judgment in the court below, and therefrom defendant appeals.— *Affirmed.*

*Clinton L. Nourse,* for appellant.

*McHenry & Jones,* for appellee.

BISHOP, J.— Necessary to some of the questions presented is the state of the pleadings. As originally filed, the petition was in one count. Therein it was recited that defendant is a corporation doing business in the city of Des Moines; that on a day named defendant sold to plaintiff a quantity of oil to be used as a cooling agent for the cylinder and engine in an automobile owned and operated by him; that defendant by its agent guaranteed that said oil was not inflammable or capable of combustion, and was absolutely safe to be used as a cooling medium; that, believing in the truth of said statements and representations, and relying thereon, plaintiff purchased the oil, and the same was placed in his automobile; that, in truth, said oil was of an inflammable character, and was capable of ignition, and was not safe for use as a cooling medium; that on the day following his purchase, while plaintiff was using his automobile, the said oil in some manner unknown to him, and without fault on his part, became ignited, and with the result that his machine was burned and wholly destroyed; " that the representations and guarantees made by defendant were knowingly false and untrue; that he has been damaged by reason of the false representations," on which he relied in a sum named. Defendant answered, admitting the sale of oil by it to plaintiff, but denying the other allegations of the petition. Before trial plaintiff amended his petition. Therein some additional facts were stated, and an implied warranty respecting the character and quality of the oil was contended for. On the amendment being filed, defendant moved that the petition be divided into counts, and, as grounds therefor, it was pointed out that in the petition as originally filed an express warranty was declared upon, while in the amendment an implied warranty was set up. Complying with the

motion, plaintiff filed "an amendment to his petition as count 2 thereof." Therein was alleged the sale of oil to plaintiff, and the use for which purchased; that plaintiff had no knowledge as to the qualities of said oil; "that defendant was engaged in the business of preparing and testing different oils for different mercantile purposes, and held the same out to the general public for use for certain specific purposes;" that defendant knew the purpose for which the oil purchased by plaintiff was intended, and, by its agent, placed the same in the automobile of plaintiff to be used as a cooling agent for the engine and cylinder thereof; that plaintiff, in purchasing said oil, relied upon the representations of defendant as to its character and quality. The circumstances of the fire and destruction of the automobile are then alleged as in the first count; so, also, that the oil was inflammable and unsafe for use for the purpose purchased. It is then said that the intention of the petition is to plead but one cause of action, stated in different counts to meet the evidence as it may arise on the trial. The defendant answered the amendment, admitting the sale of the oil and denying all other allegations. The answer then continues: "That at the commencement of the action plaintiff elected to sue upon an express warranty, and issue was joined thereon and so remained until the amendment was filed alleging an implied warranty." That in this situation "plaintiff waived any claim upon an implied warranty, and is now estopped from claiming thereon."

I. In stating the case to the jury, and in the body of the charge, the court proceeded on the theory that the first count of the petition amounted to an allegation of express warranty, and of a breach of such warranty.

1. CONTRACTS: breach: pleadings.

Appellant contends that there was error, and for three reasons: (a) No such warranty was pleaded; (b) no competent evidence that such a warranty was made; (c) no evidence that the agents of appellant had any authority to make such a warranty. These matters we shall

dispose of in their order. It is the gist of the argument against the pleading that, conceding a cause of action to be stated, it is of one sounding in tort. It is quite true that there is some confusion in the pleading. Some language quite inappropriate to the statement of a contract breach and the rights arising therefrom is used; but we think that the pleading as stating a cause of action founded on contract should not be condemned as fatally deficient. It is the averment that the oil was "guaranteed" to be noninflammable and safe, and this was the equivalent of saying that there was a warranty of the character and quality thereof. 4 Words & Phrases, 3183. So, also, the allegation that the oil purchased proved to be inflammable, and that it did ignite in use, may fairly be accepted as a substantial averment that the warranty failed; and it is said that an injury involving damage resulted. These were all the matters necessary to be proven, and it cannot, therefore, be material that the pleader in drawing his conclusions conceived the idea that the culpability of defendant consisted in making a representation which proved to be false.

Moreover, the case must be considered in this court following the line of the theory on which it was tried in the court below; and this we feel constrained to say, although the point is not made by counsel for appellee. **2. APPEAL: questions not raised below.** In justice to the trial court, if on no other ground, we will not permit a party to mend his hold after coming into this court, and seek to advantage himself on grounds not suggested on the trial below. Defendant did not question the pleading by motion, demurrer, or otherwise. On the contrary, throughout the trial the count was regarded as one presenting a demand based on breach of contract right. It was so recognized by defendant in its motion to divide into counts, in its motion to instruct a verdict after the evidence was all in, and in request for instructions to the jury. And in the motion for new trial it was not suggested, in terms, that the case had been

tried and submitted for a verdict on a theory not warranted by the pleadings.   Such being the course pursued, it does not remain for appellant to come into this court and contend that the issue of express warranty was not before the trial court.   *Bull v. Keenan,* 100 Iowa, 144; *Weis v. Morris,* 102 Iowa, 327; *Battles v. Roberts,* 120 Iowa, 747.

Was there competent evidence on the subject of express warranty sufficient to take the case to the jury?   Plaintiff called as a witness one Campbell, an automobile sales-

3. SALES:
   warranty:
   evidence.

man, and, over the objection of defendant, he was allowed to testify that on a day previous to the transaction in question, at the request of and in the presence of plaintiff, he called up the office of defendant by telephone, when a conversation occurred, as follows:   " Q.   Are you selling Polar Ice oil for cooling purposes in automobiles?   A.   Yes.   Q.   Do you recommend it?   A.   Yes.   Q.   Is it being used to any extent?   A.   Yes.   Q.   Is there any danger from fire?   A.   No."   To other questions the witness answered that he did not know who was talking at the other end of the line, but that he had frequently telephoned orders to the office of defendant; and, referring to the person who answered at the time in question:   " I would say it was the same person."   The objection made to this testimony was that any statement made to Campbell was incompetent and immaterial under the issues; that it did not appear with whom the conversation was had, nor that such person was an employé of defendant authorized to make representations.   And for these reasons counsel insist that the evidence was improperly admitted into the record, and should not, therefore, be considered in determining whether or not a case had been made for the jury.   We are not disposed to concede merit in the objection.   The fact that the conversation was carried on by Campbell is not material.   To all intents and purposes plaintiff was talking through Campbell.   30 Am. & Eng. Ency., 150.   As the case stood at the time the evidence

was offered, plaintiff was claiming that defendant was holding out the particular brand of oils as suitable and safe for cooling purposes, and clearly enough the evidence was addressed to proof thereof.

Nor is the fact that the witness could not positively identify the person with whom he was talking necessarily fatal to the admissibility of the evidence. It is well settled

4. EVIDENCE: communications by telephone. that, where otherwise admissible, telephone conversation may be repeated in evidence. "Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on." *Wolfe v. Railway,* 97 Mo. 473 (11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331); 27 Am. & Eng. Ency., 1091. The weight to be accorded to such evidence is another thing. It may be much or little, as the jury shall attach credibility, or as there shall be other evidence tending to support or contradict.

As bearing on the general question now being considered, it may be here added that the evidence subsequently introduced made it appear that there was employed in defendant's office an order clerk who was in charge of the telephone, and whose duty it was to attend to telephone orders. In view of what we shall say later on the subject of the authority of defendant's agent to make representations, it will be sufficient to say at this time that the objection to the evidence on that ground was properly overruled.

But plaintiff did not rely wholly upon the evidence of Campbell. As a witness on his own behalf, he testified that, having been informed that defendant was selling an oil for

5. SAME. cooling purposes, he called up the office by telephone and was told that such was the fact, and, in response to specific inquiries, was told that the oil was all right, and that there was no danger of it burning; that on the following day he went to defendant's place of

business, and was told by the salesman in charge that the company was selling an oil called " Polar Ice oil " as a cooling medium for automobile purposes; that the oil was being used by several persons for that purpose, and that it worked all right; and, further, that, in answer to the specific question whether there was any danger of the oil burning in the machine, he was answered: " No; it will not burn." So, also, the evidence for the defendant made it appear that Polar Ice oil — so named by it — is a product of its refinery situated in the State of Indiana; that the oil is produced from crude petroleum; and that for some time defendant had been keeping the same in stock at Des Moines, and selling the same in and about the city as a cooling medium for gasoline engines. Quoting from the testimony of defendant's sales order clerk: " We were at that time selling it for use in automobiles to persons who applied for it for that purpose." We think the question with which we began, as to the sufficiency of the evidence to support a finding of express warranty, must be answered in the affirmative.

A warranty may rest in parol, and no particular form of words is necessary thereto. A warranty arises when there is a distinct assertion or affirmation of fact — which is relied upon — respecting the quality of the goods, or the adaptability thereof to the purpose for which they are desired. As said in *Hughes v. Funston,* 23 Iowa, 257: " Any distinct assertion or affirmation made by the owner during a negotiation for the sale of chattels, which, it may be supposed, was intended to cause the sale, and was operative in causing it, will constitute a warranty, and the question whether the particular affirmation amounts to a warranty is one of fact for the jury. If made and relied upon as such, it is a warranty." And the rule is stated in 30 Am. & Eng. Ency., 144, thus: " If the buyer purchases an article for a particular use, which is known to the seller at the time, and the latter assures the buyer that the article is ' all right,' or uses equivalent language, the assurance, if relied on by

the buyer, amounts to a warranty that the article in question is reasonably fit for the use for which the buyer desires it, and the seller must be presumed to have so intended it." Among the cases cited in support are the following from this court: *Latham v. Shipley,* 86 Iowa, 543; *Rose v. Meeks,* 91 Iowa, 715; *Briggs v. Rumely Co.,* 96 Iowa, 202. We think the rule thus stated applicable to the case made by plaintiff, as shown by the record before us. Defendant was holding our Polar Ice oil, a product of its own manufacture, as a cooling medium for gasoline engines, and the express representation made to plaintiff was of a fact concerning the properties of such oil; i. e., that it was adapted to such use, was noninflammable and safe. Quite different from this are the cases which present instances of mere trade talk; that is, language expressive of opinion used by a dealer in puffing his goods — especially where such goods are regularly on the market and generally known to the trade — to induce a sale.

On the question of the authority of the selling agent of defendant to warrant the oil sold to plaintiff but little need be said. We grant to counsel for appellant that there is no evidence in the record of authority granted in terms. And we may concede for the purpose of the case that, by general rule, a bare authority to sell does not carry with it by implication authority to warrant. But an essential attribute to every agency " is the power to do all that is usual and necessary to accomplish the object for which the agency was created." Mechem on Agency, section 347. And every one knows that the manufacturer of goods who employs sales agents puts his goods into the hands of such agents to be sold. So, where goods are designed for a particular purpose, and therefore to appeal to a particular trade, he naturally expects his agents to make known that purpose, and to represent to proposing purchasers that the goods are adapted to and can be safely used for such purpose. Ac-

6. SALES: authority of agents: representation as to quality of goods.

cordingly it must be presumed that that which he expects to be done, and without which the object of the agency could not adequately be accomplished, he has authorized to be done.   And especially this should be the rule where the article offered for sale is of such a character as that the proposing purchaser cannot be expected in reason to have knowledge of the properties thereof, and must rely upon the superior knowledge and skill of the manufacturer and those who represent him.   Moreover, as we shall see presently, the law will imply a warranty in the case of a sale so made, and it would be illogical, at least, to permit a principal to say he did not authorize that which the law attaches as a consequence to the very act the agent was employed to do.   As defendant was the manufacturer of the oil in question, and knew the properties thereof as plaintiff could not know, and as it was carrying such oil in stock to be sold by its agent in charge as a cooling medium for gasoline engines, we do not think it is in any position to deny the authority of such agent to make representation of the purpose of the oil and that it could be safely used for that purpose.

II.   The jury was also instructed on the subject of implied warranty, and counsel for appellant say that here was error, for the reason that the circumstances of the sale were not such as to give rise to a warranty by implication.   We think otherwise.   The defendant had denied in pleading and evidence that any express warranty had been made, and the issue of implied warranty was in the case.   If there was no sufficient evidence of an express warranty — and the jury should so determine — still plaintiff was entitled to have the issue of implied warranty considered; there being evidence upon which a finding of implied warranty could be made to rest. And we think there was such evidence.   The case is one, as we have seen, of a sale by the manufacturer of a product designed to meet the demand of users of gasoline engines for a cooling medium.   A witness for defendant, familiar with

7. IMPLIED WARRANTY: submission of issue.

the manufacture, described the process minutely, and said that at various times tests of the finished product had been made to determine the degrees of heat necessary to produce ignition. It goes without saying, therefore, that defendant was fully advised of the character of the product and the properties thereof. Other witnesses for defendant testified that the oil was being sold in large quantities to be used for the purpose in question. The selling agent testified that, when plaintiff applied at defendant's office for information, he was told that the oil was being so used with good results, and two persons were named who had used it in automobiles and who reported that it was a success. Such was the evidence, and, to say the least, there was a case made to go to the jury.

In such a case the maxim, " *Caveat emptor,*" cannot be given application. " Where a manufacturer contracts to supply an article which he manufactures or produces, to be applied to a particular purpose, so that the

8. SAME: *caveat emptor.* buyer necessarily trusts to the judgment or skill of the manufacturer, there is in that case an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied." Benjamin on Sales, section 657; *Parsons v. Mallinger,* 122 Iowa, 703; *Morse v. Stock Yards,* 21 Or. 289 (28 Pac. 2, 14 L. R. A. 157); *Dushane v. Benedict,* 120 U. S. 630 (7 Sup. Ct. 696, 30 L. Ed. 810); *Coal Co. v. Fay,* 37 Neb. 68 (55 N. W. 211); *McCaa v. Drug Co.,* 114 Ala. 74 (21 South. 479, 62 Am. St. Rep. 88); *Gammell v. Gunby,* 52 Ga. 504. Quite a different case is presented where the buyer selects an article on his own judgment. There the dealer, although he may be advised of the purpose to which the article is intended to be put, may not be held as upon an implied warranty. This is because the buyer gets what he buys and buys what he gets, and he takes the risk of its fitness. And the cases cited by counsel for appellant bear out this view.

But to the case made by the record before us the rule is not applicable; hence the cases are not applicable.

III.  A further contention of appellant is that there was a failure on the part of plaintiff to show that the fire which destroyed his automobile was caused by any defect in the oil.  On this subject the evidence is not altogether clear, but we are of the opinion that there was sufficient in support of plaintiff's theory of the fire origin to warrant a submission of the case to the jury.  In this situation the verdict should not be disturbed..  Some other questions are made in argument; but, as they are not of sufficient moment to warrant a reversal, we shall not take time for discussion.

The judgment must be, and it is, *affirmed.*