### Scruggins v. Jones, et al.

(Decided March 3, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Sales—Retailer of Canned Foods is Not Responsible to Customer for Unwholesome Condition, Unless he Expressly Warrants.— Where article of food is one of general use, put up by reputable concern in sealed cans, exterior of which is in good condition, retailer is not responsible to customer for defective or unwholesome condition of contents, unless he expressly warrants it to be free from defects.
2. Sales—Evidence of Express Warranty of Wholesomeness of Canned Food Held Insufficient to go to Jury.—Evidence of express warranty of purity and wholesomeness of canned shrimps by retailer held insufficient to go to jury.

WM. BAUMEISTER and D. MOXLEY for appellant.

ALLEN P. DODD for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellant, Mrs. Otia Scruggins, was recovering from a case of influenza. Within the previous ten years she had undergone several surgical operations which had affected her nervous system and she was in a state of general debility. Her physician prescribed sea food, particularly shrimp, as a diet. Her son purchased a can of this from appellees, who were conducting a grocery.

Claiming that the shrimp was poisonous and impure; that she ate of it and was thereby made sick and

permanently injured she sued appellees and the firm packing the shrimp for damages on an implied warranty.

In an amended petition she alleged an express warranty upon the part of appellees. Being required to elect which cause of action she would prosecute she elected to prosecute that against appellees on the express warranty and dismissed the action as to the packing firm.

A motion was made at the close of plaintiff's evidence for a peremptory instruction, which was refused. At the close of all the evidence it was renewed and granted, and a directed verdict was returned against her, and she appeals.

Appellant states that the can was opened in the morning and immediately emptied into a bowl and that she observed some discoloration of the shrimp. She was not familiar with that diet and did not know whether there was anything wrong with it. She ate one piece in the morning and another at noon. At luncheon she partook of some potato soup and about two in the afternoon she ate some more of the shrimp and later was taken violently ill, suffering with violent retching and vomiting. A physician was called who administered medicines. Later in the evening she secured her family physician, who remained with her until eleven o'clock before she obtained relief. She had had no stomach trouble prior to this, but has suffered from it a great deal since.

Her physician corroborates her statements as to what occurred in his presence. He examined the shrimp and found some of it soft and discolored. The paper with which it was wrapped was also discolored. He put it back in the can with the paper around it and carried it to the city chemist for analysis. Her condition was similar to ptomaine poisoning. He thinks the shrimp was deteriorating and produced this condition. He had observed no stomach trouble prior to that time, but she has since suffered severely therefrom. He attributes this to the shrimp she ate and thinks her stomach is thereby permanently disarranged. He is not a bacteriologist but has had considerable experience in general practice.

Her son, William Scruggins, testifies that he purchased the can of shrimp from appellees on Saturday night. He took it home and on the following morning opened the can and emptied the contents into a clean

bowl and gave his mother some of it. He also corroborates his mother in her other statements.

The city chemist was introduced by defendant. He testified that he made a chemical and bacteriological test; that the discoloration on the paper could be produced by the contents attacking the metal of the container, which was composed of tin and lead, but his examination disclosed the absence of any poison of that character and he thinks the discoloration was caused by fermentation. This led to a bacteriological test. He discovered some bacteria which he gave to white mice and white rabbits without any harmful effect. These animals have a reaction similar to that possessed by the human anatomy, and he does not think the shrimp was in a condition to be harmful to a person, though he does not approve that character of diet for one who is sick.

If we assume that there was an issue in the evidence for the jury to determine whether or not the condition of the shrimp was such as to prove harmful, it still does not appear that a peremptory instruction was improper.

Formerly food was generally sold direct by the producer to the consumer and the former was presumed to know its condition and held to a strict accountability therefor if it proved to be poisonous or harmful. Also the retailer selling food could by the sense of touch, sight or smell detect its condition and in offering it for human consumption was held to impliedly warrant both its character and condition. Under such circumstances the doctrine of *caveat emptor* had no application.

But modern industry has developed a revolution in the production and marketing of food, and materially changed the status of the parties. Today in the sale of many articles of food the retailer and consumer stand in practically the same position. Both are far removed from the producer. The article comes packed and sealed in a tin container or can. No inspection of the contents can be made without opening the can, and the public generally has learned to rely upon the character and standing of the packer and the quality of certain brands. Neither seller nor purchaser can otherwise judge of its condition and in this respect both stand upon equal footing. So that the rules of the common law relating to foods have been modified to meet the changed conditions and it is now generally recognized that where the article

is one of general use and put up by a reputable manufacturer or packer in a sealed can, the exterior of which is in good condition, the retailer is not responsible to his customer for the defective or unwholesome condition of the contents unless and except at the time of the sale he expressly warrants the same to be free from defects. Walden v. Wheeler, 153 Ky. 181; R. C. L., vol. 11, sec. 29, page 1124; Bigelow v. Maine Central Ry. Co., 43 L. R. A. (N. S.) 627.

As bearing on the same principle we might also cite Peaslee-Gaulbert Co. v. McMath's Admr., 148 Ky. 265; West v. Emanual, 198 Penn. 180; 53 L. R. A. 330.

The question remains was there sufficient evidence of an express warranty to authorize a submission to the jury? On that question William Scruggins testifies that at the time of the purchase he asked one of appellees, "Have you any good shrimp?" He said, "Yes, sir; we have good shrimp, Premium Brand, put up by one of the best packers in the country." I said, "Well, how much is that shrimp?" He said, "When I bought it I paid 28c a can for it, but we have a few more left and you can have it for a quarter." "I said, 'Well, let me have a can of the shrimp.' He gave it to me, and went ahead with the rest of the order."

On cross-examination he was asked in reference to a deposiiton he had given in the case in which he used the following language: "I told him what I wanted and Mr. Owens came to me at the butcher's counter and I asked him if he had any good shrimp, that the doctor wanted mother to eat some of it, and he said that he had some from the best packers in the country, the Premium Brand, and I told him I would take a can." Q. "When you went in there you told him your mother wanted some shrimp?" A. "Yes, sir." Q. "That the doctor had prescribed for her to eat shrimp?" A. "Yes, sir." Q. "And asked him if he had any good shrimp?" A. "Yes, sir." Q. "He told you that he had some shrimp packed by the best packers in the country?" A. "One of the best packers in the country." Q. "And that was the Premium Brand?" A. "Yes, sir." Q. "The can you got had Premium Brand on the outside?" A. "Yes, sir."

Witness admits making these statements in his deposition and explains his present language by saying in reference to the former, "Well, if I did not use the same wording, the same meaning."

It is admitted that the article was put up by a reputable packer. The witness knew that the can was sealed and that the seller had no opportunity of inspection. It is admitted that the can was branded as represented and it is not claimed that there was any exterior defect upon it.

It is clear that appellee's statements referred to the character of the packer and of the brand, but not to its then condition, and were understood by both parties as a description of the article but not a warranty of its present purity and wholesomeness.

It follows that there is no evidence of an express warranty of that fact and the court properly instructed the jury.

Wherefore, the judgment is affirmed.