UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, vs. WESTERN IRON STORES COMPANY, Respondent.

*May 10—June 18, 1928.*

For the appellant the cause was submitted on the brief of *Bloodgood, Kemper & Bloodgood,* attorneys, and *Eric Wm. Passmore,* of counsel, all of Milwaukee.

For the respondent there was a brief by *Herman Friedrich* and *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish,* of counsel, all of Milwaukee, and oral argument by *I. A. Fish.*

ROSENBERRY, J. The complaint alleges:

"Fourth. That on or about the 12th day of May, 1922, an agent of the defendant called at the office of the Galloway

West Company in the city of Fond du Lac, and solicited that the Galloway West Company buy from the defendant certain chain, well knowing that the Galloway West Company in and about its usual business was engaged in the lifting and transportation of heavy machinery, and required for that purpose steel chain of such strength as to safely lift and convey said machinery without danger of injury to its employees.

"Fifth. That plaintiff further alleges that it is well known to the defendant and others engaged in the selling of iron stores, that chains of certain dimensions have certain tensile strengths, which strengths vary according to the dimension and description of the chain. That on or about the 12th day of May, 1922, said representative of the defendant and the purchasing agent of the Galloway West Company well knew that ⅜ inch steel loading chain, sometimes described as ⅜ inch straight link chain, had a proof test of 4,900 pounds, and a safe working load of 2,450 pounds.

"Sixth. That the representative of the defendant, knowing of the business in which the Galloway West Company was engaged, and knowing that the Galloway West Company desired to purchase chain to be used for the lifting and hoisting of heavy machinery, sold and delivered to the Galloway West Company on or about the 12th day of May, 1922, 100 feet of ⅜ inch steel loading chain, otherwise described as ⅜ inch common straight link chain, well knowing that the Galloway West Company relied upon the usage in the trade that such chain as manufactured and sold would have the same strength as all other ⅜ inch link common chain, to wit: the safe working strength of 2,450 pounds. And the defendant then and there warranted the chain as ordered, to be standard ⅜ inch straight link common chain, in all respects fit and proper for such use, and of merchantable quality, with a safe working load of 2,450 pounds; and the Galloway West Company paid the defendant therefor the agreed price for ⅜ inch steel loading chain, otherwise described as straight link common chain, having a safe working load of 2,450 pounds."

Upon the trial the following stipulation was entered into:

"That there were no representations or agreements made in writing between the parties as to the transaction described

in the complaint, except a certain order, copy of which is hereby attached, and which is hereby made part of the complaint."

The order was as follows:

Galloway West Co., Fond du Lac, Wis.
Purchase Order No. 674.
Date, May 12, 1922.
Western Iron Stores,
. . . . . . . . . . . . . . . . . . . . . . . .

You will please furnish us the following materials, shipment to be made as stated below:

1# 1/4 cut washers        100 ft. 3/8" st link chain
2# 5/16 "    "            100 ft. 1/4" st link chain
3# 2/8" "    "            6–3" ring hooks
5# 1/2" "    "            6–3" grab  "
5# 5/8 "    "             1 length each 1/4–5/16
                            3/8–7/16–1/2–9/16
                            5/8–11/16–3/4–13/16
1 Large frame only          7/8–1–1  1/16–1  1/8–
   24" for 1–15/16          1 3/16–1  1/4–15/16–1
   shaft.                    1/2–1  15/16
Wanted ——
Ship via ——
   Soo Frt at once.

GALLOWAY WEST CO.  Jos
DEPT.  By D. C. West.

There is language in the sixth paragraph of the complaint which, if liberally and broadly construed, might be interpreted as alleging an express warranty. It is quite apparent, however, that although the stipulation does not in terms say that there was no express oral warranty, it was so interpreted by counsel and the trial court. The case is argued and presented here upon that basis and we shall so treat it. The Galloway West Company ordered from the defendant the goods mentioned in Exhibit 1, the goods were shipped and put into use by the Galloway West Company, and the question is, Was there an implied warranty that the specific goods delivered had the standard qualities which it was

generally assumed in the trade that goods of that description ordinarily have?

A determination of the question raised involves the interpretation of sec. 121.15, Stats., the Uniform Sales Act.

"Subject to the provisions of this act, and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods. supplied under a contract to sell, or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer, or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by the description from a seller who deals in goods of that description (whether he be the grower or manufacturer, or not), there is an implied warranty that the goods shall be of merchantable quality. . . .

"(5) An implied warranty or condition as to quality or fitness for a particular purpose may be annexed by the usage of trade."

It appears that the chain was purchased on May 12, 1922, and the defect was discovered by the breaking of the chain in January, 1925. As a result of the breaking of the chain the Galloway West Company was obliged to pay an employee $5,800 under the workmen's compensation act. The plaintiff paid this amount as insurer and thereby became subrogated to the rights of the Galloway West Company. The allegations of the complaint with respect to the claimed defect are as follows:

"That the Galloway West Company relied upon said warranty, and attempted to use said chain for the purpose of lifting a steel pasteurizer tank, weighing approximately 1,600 pounds, the chain then being in the same condition as it was at the time of its delivery by the defendant, but that the chain proved unsound by reason of a defective link, which link broke and permitted the steel pasteurizer to fall

upon and kill one Edward Hamberger, an employee of the Galloway West Company," etc.

The complaint is very carefully and skilfully drawn and many interesting questions are suggested. We shall only consider those necessary to a disposition of the case.

The fifth paragraph of the complaint alleges in effect that the Galloway West Company knew as well as did the defendant the qualities of the ⅜ inch straight link chain ordered. It is apparently an article of merchandise bought and sold in the trade and may be used for any purpose for which a chain of that size is adapted. No inference can be drawn that the Galloway West Company relied upon the seller's skill or judgment. It is quite evident from the allegations of the complaint that the seller knew no more about the qualities of this chain than did the buyer. If it was the intention of the buyer to procure a chain of tested tensile strength, it was its duty to have so specified. It must be a matter of common experience that no matter what care is exercised in the manufacture of chains or other like articles of commerce there will be occasional latent defects, and when a buyer orders goods sold in the markets by description, specifies nothing in regard to the qualities of the goods purchased except that they shall be such as answer the description given, and goods of such description are delivered, there is no implied warranty that latent defects, which can be discovered if at all only by tests, do not exist. To require the seller to deliver tested chain on an order for ordinary chain would require the seller to deliver a different kind of article than the buyer ordered. While it is the intention of the Uniform Sales Act to make the seller liable as a grower or manufacturer would be under like circumstances, it certainly cannot be the intention of the act that the seller of ordinary merchandise produced in quantity impliedly warrants that the goods are without latent defects. The seller warrants only that they

are of the kind and character which he was to deliver under his contract. If as in this case it should be held that the seller warrants against a defect not disclosed by over two and one-half years of use and discoverable only by careful testing, a burden would be cast upon the sellers of merchandise which would be unreasonable and intolerable. No such result could have been contemplated by the codification of the law of sales. The defendant could have no more knowledge of the tensile strength of the chain sold in this case than did the buyer unless and except by testing the chain. The buyer did not order tested chain but the ordinary commercial article. It received what it ordered.

*By the Court.*—Order affirmed.