Emily W. TORPEY, Plaintiff,

v.

RED OWL STORES, Inc., Defendant.

Civ. A. No. 4826.

United States District Court,
D. Minnesota, Fourth Division.

Feb. 21, 1955.

Bergmann Richards, of Richards, Janes, Hoke, Montgomery & Cobb, Minneapolis, Minn., appeared in behalf of defendant in support of said motion.

Martin J. Ward, of Gleason, Ward, Orff & Johnson, Minneapolis, Minn., appeared in behalf of plaintiff in opposition thereto.

NORDBYE, Chief Judge.

The action was one to recover damages growing out of an injury to plaintiff incurred when plaintiff was pressing the cover back on a partly-used jar of applesauce sold by defendant to plaintiff's sister, Miss Mary Ward. Plaintiff's evidence showed that she was helping Miss Ward clear the table after a dinner at which part of the jar of applesauce had been eaten and, at Miss Ward's suggestion, returned the unused portion of applesauce to the opened jar. It is clear

that plaintiff was resealing the jar in a careful and in the customary manner when it collapsed under her hand, causing severe lacerations of her hand and wrist. She alleged that such injuries have resulted in a permanent partial loss of motion of some of her fingers.

The complaint alleges both negligence on the part of defendant and breach of an implied warranty that the jar of applesauce was of merchantable quality and reasonably fit for the purpose for which said product and container were sold. The issues of negligence and implied warranty were submitted to the jury which returned a verdict for plaintiff. Accompanying this general verdict, the jury returned answers to special interrogatories which showed that, although there was a defect in the manufacture of the glass jar which rendered the use of the jar dangerous to persons who would use it in the manner in which such jar would ordinarily be used, defendant did not fail to exercise reasonable care to ascertain the defect. It found, however, that the purchaser of the applesauce relied upon the skill and judgment of the seller that it would be reasonably fit for its intended purpose, that the jar was not reasonably fit for that purpose, and that the defect which rendered it unfit proximately caused plaintiff's injuries.

■ The grounds for defendant's motions are (1) that the evidence does not establish facts sufficient to sustain a verdict for plaintiff, (2) that plaintiff cannot recover on implied warranty because there is no privity of contract between her and defendant, (3) that the evidence is insufficient to sustain a finding that the jar was not reasonably fit for its intended purpose, (4) that the evidence is insufficient to show that the fracture of the jar was the result of the alleged weakness therein, (5) that the evidence is insufficient to show that any defect was the proximate cause of plaintiff's injuries, and (6) that the Court erred in instructing the jury that contributory negligence is not a defense to a suit on implied warranty. As to the grounds numbered (1), (3), (4), and (5), the testimony of plaintiff's expert, Mr. Cartier, clearly indicated that the jar in question was considerably thinner at the transition zone, that is, that area where the sides of the jar curve into its base, than it was throughout the sides of the vessel. His testimony indicated that this transition zone was, on the average, one-third thinner than the wall area directly above it, and since the transition zone would be the area which would be subject to the maximum pressure when the cap was being replaced in the ordinary manner, this jar was defective for the purpose for which it was plainly intended. His testimony was, in addition, that the fracture of the jar in question did actually originate in that transition zone, and there is no persuasive evidence to indicate that any external force entered into, or was the cause of, the fracture. Thus the jury's findings that the jar was not reasonably fit for its intended purpose and that this was the proximate cause of plaintiff's injuries have abundant support in the record. The Court cannot perceive any prejudicial error in its instruction that contributory negligence would not be a defense to a breach of an implied warranty. Although there may be some conflict of authority upon this issue, see Brown, The Liability of Retail Dealers for Defective Food Products, 23 Minn. L.Rev. 585, 602–603 (1939), it could not have prejudiced defendant in any event, since there was no substantial evidence in the case of any contributory negligence. Therefore, as the Court indicated at the conclusion of the arguments on this motion, the only real issue is whether plaintiff is entitled to recover on the theory of implied warranty.

The State of Minnesota has adopted the Uniform Sales Act, which provides that there is no implied warranty or condition as to the quality of goods supplied under a contract to sell except as there specifically provided. Minn.Stat. § 512.-15 (1953), M.S.A. However, that Act does provide that,

"(1) Where the buyer, expressly or by implication, makes known to

the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

There would be no room for any contention that defendant herein was not apprised that the jar of applesauce was sold for the purpose of consumption and that necessarily included the use to which the buyer would put the article sold in the acts of opening and probably resealing the cap on the jar. However, there are several substantial obstacles to plaintiff's claim for relief. In order to hold that plaintiff is entitled to recover in this action, the Court must conclude, first, that the purchaser of the applesauce relied in some manner upon the judgment of the seller as to whether or not the article purchased would be reasonably fit for its intended purpose, second, that the warranty, if there was one, extended not only to the product itself, but to the container in which it was sold, and third, that the benefits of that warranty can be availed of by a complete stranger to the contract of sale.

The Court submitted the question of reliance to the jury which found that the buyer of the applesauce did rely upon the skill and judgment of the seller. However, it seems upon further consideration that the question was not one upon which the jury should have been allowed to speculate. The basic facts and circumstances of the purchase were not in dispute. The evidence showed that Miss Ward herself made the decision to purchase Mott's applesauce rather than another brand and selected that brand from the shelf without any advice from the defendant or its agents. The only question was whether such admitted facts permitted an inference of reliance upon the seller's skill and judgment.

Many courts have held as a matter of law that such facts do not constitute the kind of reliance which will authorize the finding of an implied warranty. The test as to when a warranty of reasonable fitness will be implied has been well stated in American Player Piano Co. v. American Pneumatic Action Co., 1915, 172 Iowa 139, 152, 154, 154 N.W. 389, 393,

"The distinction between the cases in which a warranty is implied and where it is not implied is that in one case a person buys a distinct thing, an exact article, and gets the thing he bargained for. He cannot complain that it does not accomplish the purposes for which he purchased it, although he communicated that purpose to the seller. In such cases he takes his own risk as to the fitness of the thing for the intended purpose, and no warranty is implied. * * * The other case is where one buys an article to be used for a certain purpose, and the seller undertakes to furnish him the article required. * * * The distinction is between the manufacture and supply of an article to satisfy a required purpose, and the manufacture or supply of a specified, described, and defined article. In one case there is an implied warranty, and in the other there is none."

See, also, Conkling v. Standard Oil Co., 1908, 138 Iowa 596, 116 N.W. 822. It has been held by the late Justice Cardozo, in Ryan v. Progressive Grocery Stores, 1931, 255 N.Y. 388, 175 N.E. 105, 106, 74 A.L.R. 339, a case substantially similar to the one at bar, that there was no warranty of reasonable fitness in a sale of a defective loaf of bread, for "there can be no inference of reliance where the buyer selects the brand and gets what he selects." Finally, the Supreme Court of Minnesota in Iron Fireman Coal Stoker Co. v. Brown, 1931, 182 Minn. 399, 400, 234 N.W. 685, has construed the statute now under consideration as merely a restatement of the common law rule that where there is a sale of a known and defined article, and if that article is in fact supplied, there is

no implied warranty. In so doing it pronounced the following rule,

> "The spirit and intent of subdivision 4 of the statute is that the seller is not held to an implied warranty because the buyer gets the distinct thing selected by him, an exact article, for which he bargains. So, acting upon his own desires, he takes his own chances as to the fitness of the article, and should not be permitted to complain of the seller who has supplied him with the very thing he sought. B. F. Sturtevant Co. v. LeMars Gas Co., 188 Iowa 584, 176 N.W. 338. In such cases it is not important that the buyer discloses to the seller his intentions as to the use of the article. * * * Or, to state it another way, if the thing is itself specifically selected and ordered, the buyer takes upon himself the risk of its effecting the desired purpose. Under such circumstances, the law does not impose an implied warranty; nor should it."

This question of reliance is raised, of course, whenever one seeks to hold liable a mere retail dealer for injuries caused by latent defects in an article which the dealer cannot reasonably be expected to discover. It has very persuasively been argued that the reliance necessary to a finding of an implied warranty is not reasonably found in such a situation, and that the retailer in such circumstances should not be responsible. See Waite, Retail Responsibility and Judicial Law-Making, 34 Mich.L.Rev. 494 (1936); Waite, Retail Responsibility—A Reply, 23 Minn.L.Rev. 612 (1939). Accordingly, numerous courts have held that the warranty does not apply to retail dealers as to latent defects. E. g., Scruggins v. Jones, 1925, 207 Ky. 636, 269 S.W. 743; Kroger Grocery Co. v. Lewelling, 1933, 165 Miss. 71, 145 So. 726; Aronowitz v. F. W. Woolworth Co., 1929, 134 Misc. 272, 236 N.Y.S. 133; United States Fidelity & Guaranty Co. v. Western Iron Stores Co., 1928, 196 Wis. 339, 220 N.W. 192, 59 A.L.R. 1232; see Prosser, Torts 671 and cases cited n. 32. Indeed, in

what sense can the consumer be said to rely upon the retail dealer as to the freedom from hidden defects of the many products he sells? No reasonable person today assumes that the supermarket operator knows anything more about the hidden contents of goods in sealed containers than the consumer knows himself. Surely he does not believe that the operator could do more than make a cursory inspection of the article. Certainly the purchaser in the case at bar did not expect the defendant to make a microscopic examination of the walls of the jar to determine their resistance to stress. If she relied upon the judgment of the defendant at all, she could not have relied to a greater extent than to expect him to choose reputable suppliers, and to offer goods which a reasonable inspection showed to be safe.

It seems to be conceded even by the proponents of a theory of strict liability upon retail dealers that "only by some violent pounding and twisting" can the requisite reliance be found in cases like the present. See Prosser, Torts 692 (1941); Brown, The Liability of Retail Dealers for Defective Food Products, 23 Minn.L.Rev. 585 (1939). Nevertheless it is argued that "public policy" demands the imposition of strict liability. However, the cases previously cited register disagreement with such an interpretation of the public policy, and for reasons to be set out subsequently, this Court is not disposed to engage in the necessary pounding and twisting.

In order that the plaintiff might recover here on the theory of implied warranty, it would also be necessary, in addition to implying a warranty in this sale, to extend the warranty beyond the food product itself to the container in which the product was sold. It is notable that in the only American cases the Court has discovered dealing with this question, such an extension of the warranty has been rejected. In Crandall v. Stop and Shop, 1937, 288 Ill.App. 543, 6 N.E.2d 685, it was held that although a retailer will be held liable in implied warranty, even as to food in sealed cans, there is no implied warranty as to the

container, and therefore a plaintiff who was injured when a steel clamp flew from a glass jar of preserves and struck her eye could not recover. Similarly, in Poplar v. Hochschild, Kohn & Co., 1942, 180 Md. 389, 24 A.2d 783, it was held that the purchaser of a box of toilet articles who cut her finger on metal parts of the container when opening the lid could not sue in implied warranty.

 The final obstacle to plaintiff's recovering in this action is the lack of privity of contract between her and defendant. The question of the requirement of privity in an action against a retailer for breach of an implied warranty as to latent defects in a product sold by him has not been ruled upon by the Supreme Court of Minnesota. The court in Randall v. Goodrich-Gamble Co., 1952, 238 Minn. 10, 54 N.W.2d 769, 771, in dealing with the propriety of instructing the jury upon express warranties, did observe as follows:

> "We agree that, in the case of the sale of drugs or foods, an express warranty may extend to an ultimate consumer if the warranty in the first instance induces the purchase and the usage is consistent with the purpose for which the product was purchased in reliance on the warranty."

In that case, however, the suit was brought against the manufacturer of the product, and for reasons hereafter to be discussed, is therefore not an authoritative precedent. Further, the sale involved a bottle of liniment sold by a retail druggist to the husband of the plaintiff and the warranty involved consisted of the express representations which were contained on the label of the bottle. There is no suggestion in that decision that liability can be predicated upon an implied warranty against a retailer in absence of privity of contract.

Plaintiff urges that there is a growing tendency in the decisions and among textwriters to circumvent the requirement of privity and that the courts should "re-examine the nature of a warranty and determine whether in all cases a relationship of sale or contract is a prerequisite to its existence and, in the interest of social justice, reshape the law to conform to the requirements of modern economic life." Worley v. Procter & Gamble Mfg. Co., Mo.App., 253 S.W.2d 532, 536.

Plaintiff contends, therefore, that although there is no privity of contract, she is in a position to proceed against this defendant upon the theory of breach of implied warranty for the reason that there is nothing contractual about implied warranties and that privity is purely a contractual concept. Plaintiff strongly relies upon the language of the Supreme Court of Minnesota in Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 791, 59 A.L.R. 1164, where the court stated,

> "An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract, nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. It, because of the acts of the parties, is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings."

But although an implied warranty is a creation of law, there must be a contract to which it is annexed, and here, of course, there was no contract between this plaintiff and this defendant. Plaintiff also relies upon the fact that warranty, at early common law, was regarded in the nature of an action on the case for deceit, and that the action of assumpsit was not developed until much later. See 5 Williston, Contracts § 1505 (rev. ed. 1937); Nichols v. Nold, 1953, 174 Kan. 613, 258 P.2d 317. Therefore, she contends, her action should be categorized as one in tort rather than in contract, thus making the requirement of

privity inappropriate. But regardless of which common-law writ gave birth to today's concept of warranty, the decided weight .of authority since that time has quite firmly established the rule that a breach of warranty is available only to the parties to a sale. E. g., Dumbrow v. Ettinger, D.C.E.D.N.Y., 1942, 44 F. Supp. 763; Conner v. Great Atlantic & Pacific Tea Co., D.C.W.D.Mo., 1939, 25 F.Supp. 855; Whitethorn v. Nash-Finch Co., 1940, 67 S.D. 465, 293 N.W. 859; Cohan v. Associated Fur Farms, Inc., 1952, 261 Wis. 584, 53 N.W.2d 788. In the Conner case, supra, a case identical to the one at bar, Judge Collet surveyed the line of cases involving this question of privity and those invoking the theories of third-party beneficiary and agency in order to circumvent the privity requirement, and concluded that privity of contract has been and still is a prerequisite to a suit in implied warranty. It is difficult to see why these precedents should be regarded as any less authoritative simply because they are a departure from the idea regarding the nature of warranties obtaining at common law.

Whatever the history of warranties and whatever the conceptual explanation for their creation, warranties today are creatures of statute, purely and simply. The legislature of the State of Minnesota has, so to speak, occupied the field. The Minnesota statute on the sale of goods provides that there are no implied warranties except as there set out. Minn. Stat. § 512.15 (1953), M.S.A. Therefore, this Court is not free to "re-examine the nature of a warranty" or to increase its scope in the interests of social justice. That statute quite clearly and specifically sets out the available remedies for breach of warranty. It provides, § 512.69, that

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election:

\* \* \* \* \* \*

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty".

Further the statute defines "buyer" as, § 512.76, "a person who buys or agrees to buy goods or any legal successor in interest of such person." It has been established that a purchaser's donee is neither a buyer nor a legal successor in interest of the buyer. Hanback v. Dutch Baker Boy, Inc., 1939, 70 App.D.C. 398, 107 F.2d 203. Thus, according to the literal language of the statute upon which plaintiff's claim is predicated, she is not entitled to recover. Since no persuasive reason has been advanced for assuming that the Minnesota legislature intended a result contrary to the one which it seems to have expressed, this Court cannot conclude that the plaintiff can take advantage of the breach of implied warranty.

It may be recognized that some courts, in the interest of safeguarding the public health, have imposed strict liability upon a manufacturer or producer of food products, and the ultimate consumer has been permitted to avail himself of an implied warranty although he was not a party to the original contract of sale. The modern methods of dispensing food are no longer limited to the local grocer or butcher, but various nation-wide producers distribute their food products in cans and cartons which are intended for general consumption by the public. Apparently it is reasoned, therefore, that because of the exigencies and necessities of safeguarding the health of the consumer, the so-called privity rule should be circumvented where deleterious food is placed on the market. Moreover, it is argued that to require a suit against the retailer would be wasteful, since the effect would merely be to require a multiplicity of suits, carrying liability back through the retailer and jobber to the original maker; that the practice of reputable manufacturers is to stand behind their goods as good business policy; that the intermediate seller is a mere conduit to market the product; and that the consumer is entitled to the maximum of protection at the hands of someone,

and that the producer of the defective article is the logical one to provide it. See Prosser, Torts 689 (1941). These arguments are extremely persuasive and might well provide sufficient basis for imposing strict liability upon manufacturers and producers, at least of food products. However, the same arguments in the case at bar would seem to demand that the defendant retailer be freed from liability rather than held liable to one with whom he stands in no contractual relationship. It seems to this Court that any public policy demanding the abandonment of the privity requirement would be amply satisfied by a rule permitting an action by the injured person against the manufacturer of the defective product.

It may be, as plaintiff asserts, that "the remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales." However, the jury found that the defendant was not negligent. It is plaintiff, by invoking a theory of law which imposes liability without fault, who has chosen to have her right to recover decided in accordance with sales principles. If a theory of strict liability to the public generally were to be imposed upon retail dealers, it would be far better, of course, to discard the troublesome warranty doctrine altogether and impose strict liability outright. But if this is to be done, it must be done by the legislature of the State of Minnesota, not by judicial fiat. My view is that, in the absence of a controlling Minnesota decision, this Court should follow the unmistakable weight of authority in the interpretation of the statute now under consideration, to wit, that a person other than the purchaser of a product cannot recover from the retail seller thereof for injuries caused by hidden defects in the container of the product.

It follows, therefore, that defendant's motion for vacation of the verdict of the jury herein and for judgment in its favor notwithstanding the verdict must be, and hereby is, granted. It is so ordered.

An exception is allowed.