Coca-Cola Bottling Company *v*. Bennett.

Opinion delivered October 5, 1931.

*Buzbee, Pugh & Harrison,* for appellant.

*Pace & Davis* and *R. W. Robins,* for appellee.

Butler, J. Mrs. Laura Bennett purchased a bottle of Coca-Cola from one Ward, who had bought the Coca-Cola he vended from the appellant company. The bottle of Coca-Cola purchased by the appellee was opened by Ward in the presence of the customer. The opener used, in removing the cap from the bottle, was fastened on the edge of the "lard table" in Ward's grocery store and was "just a nail opener." The bottle was closed by a metal cap and was opened by inserting the cap under the nail opener and pressing down, thus removing the cap.

Mrs. Bennett testified that she was watching Ward when the bottle was opened. She had been chewing a flavored chewing gum just before she drank the Coca-Cola and stated that the Coca-Cola tasted peculiar, but that she thought it might have been on account of the gum she had been chewing; that she did not examine the bottle. She drank nearly all the contents when she felt some foreign substance in her throat and ejected it from her mouth to the sidewalk when it was discovered to be a large worm badly decayed, which mashed as it hit the sidewalk. It had a large head and two little horns. This worm was seen in the Coca-Cola that Mrs. Bennett spit up by the grocer and his wife, both of whom were present at the time. Mrs. Bennett became sick and sent for a doctor who testified that she was quite ill when he reached her and was vomiting and suffering from pains in the abdomen. He administered to her a hypodermic and saw

her twice a day for a week or ten days and once a day for about three weeks. The doctor further testified that she occasionally has cramping spells and her present condition is caused by gastritis or colitis and that a partially decomposed worm could cause this condition; that so far as he knew she was a healthy woman before this time.

Mrs. Bennett brought suit against the appellant company for damages and recovered a verdict of $500 in the court below. The appellant company, at the conclusion of the testimony moved for a peremptory instruction which was refused, which refusal is the error assigned for the reversal of the case.

The contention of the appellant is that as a matter of law the *prima facie* case established by the appellee when she testified that she became sick as a result of drinking a part of a bottle of Coca-Cola which contained a partially decomposed worm was overcome by testimony on the part of the appellant tending to show that the company had used ordinary care in cleansing and refilling the bottle. We are of the opinion that the evidence warranted the jury in the conclusion that the worm was in the bottle of Coca-Cola at the time it was purchased by Mrs. Bennett and that this case is ruled by the case of *Coca-Cola Bottling Co.* v. *McBride*, 180 Ark. 193, 20 S. W. (2d) 862. In that case, as in this, the testimony tending to show that there was a foreign substance in the bottle of Coca-Cola and the appellant company made proof that the bottle was filled with the most modern machinery which washed and cleansed the bottle with a strong alkaline solution heated to about 110 degrees. This solution was contained in four different compartments through which the bottles were passed, rinsing and turning them for about twenty minutes so as to thoroughly clean and remove all impurities. The appellant insists, however, that the instant case is differentiated from the McBride case in that, in addition to proving the plan and system of cleansing and refilling the bottles, there was testimony in the case at bar not offered

in the McBride case to the effect that three inspectors personally inspected the empty bottles before filling them and each of these inspectors, after testifying that they had examined the empty bottles and that each was clean and free from foreign substance, stated in answer to questions that it would not be possible for a worm to get into any of the bottles. Appellant argues that it was more likely for the worm to have gotten into the bottle when the cap was removed than that it was there when the bottle was filled.

The jury however had the right to weigh the testimony of the witnesses who testified as to the inspection in the light of the attendant circumstances, which were that the bottles passed before four 75 watt electric lights which were very bright; that they passed on a belt in front of the inspectors at the rate of 104 bottles per minute. There were three inspectors, Dunham, Henderson and Duvall. One hundred and four bottles passed by Dunham each minute and from there they divided, part passing by Duvall and part by Henderson. Each one of these inspectors testified that he inspected fifty-two bottles per minute and they worked ten hours a day under the bright lights. All of these inspectors testified that no foreign substance was in any of the bottles passing before them, but the jury might have believed from this testimony that their inspection must have been perfunctory considering the number of bottles passing before their eyes each minute and the long hours the inspectors worked; that their confidence in the efficacy of the machinery to properly cleanse the bottles was so great that they deemed a close inspection unnecessary and that they were negligent in the performance of their duty.

It seems to us that the testimony of the inspectors, considering the nature of the inspection made and the number of bottles per minute passing before them, adds but little weight to the testimony which describes the process of cleansing and refilling the bottles. Certainly, that question was one for the jury as we have stated.

Case affirmed.