# Staunton

CAMPBELL SOUP COMPANY V. WALTER A. DAVIS, WHO SUES
BY ETC.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*Showalter, Parsons, Kuyk & Coleman,* for the plaintiff in error.

*B. A. Davis, Jr.,* and *J. T. Engleby, Jr.,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

We shall designate the parties as they appeared in the trial court.

In December, 1932, the plaintiff purchased from the proprietor at Blackwater Filling Station in Franklin county a can of Campbell's pork and beans. There were present the proprietor, Buck Bradley, and three companions, Cyrus Bowman, Lloyd Overfelt and Dalton Richards. This can was opened at the time of the purchase. The plaintiff says that it was opened by himself. When he had eaten about a third of it he felt something scratch his throat, his statement being: "I felt something scratch my throat just before I bit on the glass, and I ate a spoon or two more and bit on a piece of glass, and spit this out and it looked like there was a little blood on the beans and glass where it scratched my throat. * * * I got them to stir me up some salt water and I drank some and tried to vomit and could not vomit, and afterwards then—I did not eat anything that day—and then the next day—the next evening—I went to a doctor, and I had some pains in my stomach and I told the doctor about it and he gave me some medicine."

On the morning of the day on which he saw the doctor and before the doctor was called he "passed a right smart blood—clotted blood." He was confined to his bed in all for about two or three weeks, suffered a good deal and passed a quantity of blood and when testifying, said that his abdomen was still tender. Buck Bradley said that he opened the can of beans and handed them to the plaintiff. He further said that there was no possible chance of glass having gotten into the can from the time he opened it until Davis took it. This is his statement of what then occurred:

"Q. What did Mr. Davis do with the can of pork and beans when you handed it to him?

"A. He went to eating them.

"Q. Do you know how much of that can of pork and beans he had eaten before he stopped eating?

"A. About five or six spoonfuls, as I remember it.

"Q. Do you know why he stopped eating them?

"A. He said that he bit on some glass, and he spit it in his hand and it was glass in his hand.

"Q. Did you see the glass?

"A. Yes, sir.

"Q. Immediately thereafter what, if anything, did you do for Mr. Davis?

"A. I got some salt water, so he could vomit. He said that his stomach was hurting. He took the glass of water and went outside and tried to vomit it back up."

Cyrus Bowman was standing by Davis. His testimony in part is:

"Q. How did you happen to notice that he bit on a piece of glass?

"A. He just bit and all at once he put the spoon in his mouth—and all at once he grabbed his mouth and spit it out in his hand.

"Q. Did you hear it?

"A. Yes, sir, I knew that he bit on something.

"Q. You heard him bite on the glass, did you?

"A. Yes, sir.

"Q. When Mr. Bradley handed the can of beans to Mr. Davis, was the top loose?

"A. Well, he just caught the top of it like anybody would and handed them to him.

"Q. Did it go through anybody elses hands?

"A. No, sir."

Dr. Jamison was the attending physician. He tells us when Davis came to see him he complained of a pain in the lower left side of his stomach and said that he had eaten some glass the day before. He saw him the

next day. The patient was then quite sick with high temperature and said that he had been passing blood. Next day his temperature was down but he was still sick. He saw him for three or four consecutive days thereafter. On January 6, 1933, Davis made an office call. His temperature was normal but his stomach was tender; he was nervous and had lost weight. From a memorandum it appeared that the plaintiff claimed to have swallowed glass on December 12. Upon the occasion of the second visit there were some signs of influenza present, on the first there was no indication of that malady.

An agent of the defendant company on January 7 called upon the physician and obtained from him a written statement. In it is this question and answer:

"Q. In your opinion was the illness and injury due to the foreign substance as claimed?

"A. Possibly as no other evident cause could be found."

There is confusion as to dates. Davis said that the accident occurred somewhere between the 10th and 18th of December. He further said that if he told Dr. Jamison it occurred on the 12th it must have occurred at that time. He first saw the doctor on the 19th but he is positive in saying that he saw him on the day after it happened, and he is supported in this by the testimony of his mother and sister.

For the defendant Mr. Kelleher has testified. He said that it was his duty to inspect the company's plants, their equipment and materials used. In detail he tells us of the care taken and how impossible it would be for substances like broken glass to become mingled with food products put up and sealed by them. In short, if his statement be accepted, every precaution which should in reason have been taken, was taken.

There was a verdict and judgment for the plaintiff. The defendant moved that it be set aside as contrary to

the law and evidence and for other reasons which will be noted.

When the plaintiff's evidence had been concluded the defendant moved to strike it out and assigned this reason:

"We want to move the court to strike the plaintiff's evidence at this point. The point we are about to talk about now has never been passed upon by the Court of Appeals of the State of Virginia. I am frank to admit that there is one line of authorities that holds that mere proof of the existence of a foreign object in a can or bottle, creates the presumption of negligence—makes out a *prima facie* case that is sufficient to go to the jury on, without evidence on the part of the plaintiff that the defendant was guilty of negligence. However, there is another line of cases that holds that proof of that is not sufficient to create negligence and does not make out a *prima facie* case, and is not enough to go to the jury on—that the plaintiff must go further and prove that defendant was in some way negligent, and that negligence was approximate cause of the injury."

This motion was made on September 15, 1933. On March 22, 1934, in *Norfolk Coca-Cola Bottling Works, Inc.* v. *Krausse et al.*, 162 Va. 107, 173 S. E. 497, 502, we said:

"Foreign substances in food packages not tampered with are in themselves evidence of negligence. When that is shown, a *prima facie* case has been made out, which, if not overborne by evidence for the defendant, is sufficient to sustain a verdict for the plaintiff. Evidence of a high degree of care may be sufficient, but such evidence is in conflict with a *prima facie* case, and should go to the jury. Its verdict must be sustained unless 'plainly wrong'."

In this last-named case a number of authorities are cited and considered. It is not necessary that they be re-examined. We adhere to the statement of substantive law there made.

If witnesses are to be believed, and there is nothing to discredit their evidence, Davis found broken glass in this can of beans and in all probability swallowed some of its fragments.

█ We come now to consider exceptions to instructions and of course° are limited to a consideration of exceptions taken when the instructions were given.

Plaintiff's instruction No. 1 is excepted to "on the grounds stated in support of the defendant's motion to strike the evidence." That we have considered.

██ Defendant's instruction C was refused. It reads:

"The court instructs the jury that in order to establish negligence against the defendant it is incumbent on the plaintiff to prove some fact which is more consistent with negligence than with the absence of it; and if the evidence in the case is equally consistent with the existence or non-existence of negligence on the part of the defendant or its agents, then the jury must find for the defendant. Therefore, if the evidence is equally consistent with the theory that the glass was in the beans or other ingredients when they were delivered to the Campbell Soup Company, and that the Campbell Soup Company, by the use of the care used by ordinarily prudent persons engaged in the same line of business, could not have discovered its presence, or that the glass got into the beans after the can was opened, as it (the evidence) is consistent with the theory that the Campbell Soup Company was negligent, then the jury must find for the defendant."

To the action of the court the defendant excepted "on the ground that it is in line with the defendant's theory of the case and correctly and properly states the law."

Plainly an instruction cannot be given because it is in line with a litigant's theory unless that theory finds support in the evidence. There is nothing to show "that the glass was in the beans or other ingredients when they were delivered to the Campbell Soup Company." This

is not a case in which the accident may have been due to one of two causes for one of which the defendant was not liable. Nor is there anything to show that the glass could have gotten into the can after it was opened. The evidence is full-handed to show that it could not have gotten there at that time and place. As a matter of fact the burden upon the plaintiff is plainly stated in instruction A given for the defendant:

"The court instructs the jury that the gist of this action is negligence, and unless the plaintiff has shown by a preponderance of the evidence that the defendant was negligent, and that such negligence, if any, was the sole proximate cause of the plaintiff's injury, the jury shall find for the defendant."

Instruction D was excepted to "for the same reasons stated in support of its motion to strike the plaintiff's evidence." That we have considered.

██ ██ Mr. Kelleher was asked how long he had been tasting and sampling products. He said seventeen years. He was then asked, "What is your experience as to finding any foreign matter in any of the samples?" To this question the defendant objected and the objection was sustained. It was properly sustained. The court said that it had given this witness an opportunity to describe in every detail the process of manufacture. Of course he could not by tasting and sampling a pot of soup to be canned, tell if there was glass in it, and he went from plant to plant in the discharge of his duties. Some beans were canned while he was on the road. Moreover, we do not know what the witness would have said had he been permitted to answer.

██ Defendant contends that the verdict is excessive. It met with the approval of the trial court. Not many men would be willing to swallow broken glass for $1,000, the amount of compensation which the jury, by its verdict, has said was reasonable.

This case is governed by *Norfolk Coca-Cola Bottling Works* v. *Krausse, supra.* Measured by the rules there stated we find in it no reversible error.

*Affirmed.*