## LINKER v. QUAKER OATS CO. et al.
### No. 2094.

District Court, N. D. Oklahoma.
Sept. 3, 1935.

B. A. Hamilton, of Tulsa, Okl., for plaintiff.

William F. Tucker and William H. Martin, both of Tulsa, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

This is an action for damages for personal injuries caused by particles of glass in rolled oats purchased and used by plaintiff as a food. A jury trial resulted in a verdict for plaintiff in the sum of $10,000. Defendants have moved for a new trial.

The case was submitted to the jury on the issue of negligence in the manufacture and preparation of the oats for the food market. Failure of the evidence to establish actionable negligence, and excessive verdict, are the basic grounds advanced for a new trial.

Plaintiff's proof showed she bought a package of "Quaker Oats" at a retail food store of defendant Kroger Grocery & Baking Company. The oats were manufactured or processed, and packed in a sealed container by defendant Quaker Oats Company for the purpose of sale to the public as food.

This original package was unbroken at the time of plaintiff's purchase. She carried it to her home, where it was placed on a cupboard shelf. Plaintiff's maid, being directed to prepare oats for plaintiff's breakfast, opened the sealed package and cooked a quantity of its contents, of which plaintiff partook. In eating the cooked oats she felt a gritty substance in her mouth, but did not investigate at the time to determine what it was. About five hours later plaintiff began to experience pains and a burning sensation in the stomach and bowels, and this continued with intermittent severity until relieved by the ministrations of a physician on the following morning. Also, the next day after plaintiff had breakfasted on the cooked oats, glass was discovered in a left-over portion of same, and similar particles of glass found in the uncooked oats remaining in the package opened by the maid. Plaintiff subsequently had several hemorrhages through the rectum, and about two months. after eating the oats, passed at stool bloody particles of glass resembling those contained in the oats as before mentioned.

Unquestionably the above-recited facts, although evidence circumstantial in character, were of sufficient probative force to permit the jury to conclude that glass was in the oats eaten by plaintiff. Going a step farther, were not such circumstances of strong enough evidentiary weight also to warrant a conclusion by a jury of reasonable men that the glass was in the oats when the package was prepared and sealed at the plant of the Quaker Oats Company? I think so. This being true, the problem as to the sufficiency of the evidence to entitle the plaintiff to have submitted to the jury the issue of negligence on the part of said Quaker Oats Company is reduced to the single question: Was the presence of the glass in the package of oats, at the time it left the defendant's plant, sufficient basis for an inference of negligence on the part of such defendant in the manufacture and preparation of the food? If this question be answered in the affirmative, then I was correct in submitting the case to the jury as to the liability of this defendant. Cases can be cited to support either an affirmative or a negative answer. After much study of the conflicting authorities, I have concluded, although there is much sound argument to the contrary, that the presence of such foreign substance in a factory sealed package of foodstuff is evidence from which it may reasonably be inferred that the manufacturer thereof was guilty of negligence at some stage in the processing and preparation for the market; and, therefore, when

a plaintiff has introduced proof to this extent, he has a right to have the issue of negligence submitted to the jury. Of course, such prima facie case may be refuted by the defendant's proof of proper care, if convincing, but none the less I think in such a case the determination as to whether or not there was negligence is a matter for the jury, and not for the court.

It goes without saying that any food manufacturer intending his product for human consumption should exercise a very high degree of care to see that it is free from any foreign substance which, if swallowed, might cause bodily injury or death to the consumer. Fortunately such care is the usual ·rule, and the public generally have come to· use canned and packaged foodstuff under seal of the manufacturer, without making examination of the contents of the container for deleterious ingredients. And it is a tribute to the efficiency of our food packers that actions like the present one are infrequent. However, in the process of manufacture, the most careful hand may become careless; a moment's inattention may allow some foreign substance of a harmful character to become mixed with the food, and in a large plant with numerous employees there are many opportunities for acts of negligence. The various steps in a system of manufacture, of course, are wholly under the control of the manufacturer. Such control almost excludes any possibility of a sealed food becoming contaminated by ' the presence in it of foreign substance, by any agency other than the manufacturer.

■ In view of the above considerations, it seems only fair to presume that the presence of deleterious substance in a packaged food occurs through some negligent act of omission or commission on the part of the agents of the manufacturer. So, notwithstanding the very strong evidence on the part of the Quaker Oats Company as to the care exercised by it in the manufacture and preparation of rolled oats, which evidence might well have caused a verdict in its favor, I am of the opinion I was correct in submitting the case to the jury as to this defendant. The following authorities support this conclusion: Chevy Chase Dairy Inc., v. Mullineaux, 63 App. D. C. 259, 71 F.(2d) 982; Ternay v. Ward Baking Co. (Sup.) 167 N. Y. S. 562; Richenbacher v. California Packing Corp., 250 Mass. 198, 145 N. E. 281; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657; Boyd v. Coca Cola Bottling Works, 132 Tenn. 23, 177 S. W. 80; Gainsville Coca-Cola Bottling Co. v. Stewart (Ga. App.) 179 S. E. 734; Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866; Davis v. Van Camp Packing Co., 189 Iowa, 775, 176 N. W. 382, 17 A. L. R. 649; Rudolph v. Coca-Cola Bottling Co., 132 A. 508, 4 N. J. Misc. 318; Eisenbeiss v. Payne (Ariz.) 25 P.(2d) 162; Minutella v. Providence Ice Cream Co., 50 R. I. 43, 144 A. 884, 63 A. L. R. 334; Campbell Soup Co. v. Davis (Va.) 175 S. E. 743.

■ After an extensive investigation of the authorities and mature reflection, I am convinced the case is different as to the defendant Kroger Grocery and Baking Company. So far as it is concerned, the motion should be sustained. The evidence clearly established that the package of oats was unopened at the time this retailer sold it to plaintiff. It was a product of a reputable manufacturer, packed by such manufacturer (and under the manufacturer's brand), and not by this defendant. The latter had no opportunity for inspection without breaking the sealed package, and, being the product of a reputable manufacturer, there was no duty upon the retailer to open the package and make an examination of its contents. The great weight of authority is to the effect that under the circumstances here shown there is no negligence on the part of the retailer. 11 R. C. L. p. 1124, § 29; Walden v. Wheeler, 153 Ky. 181, 154 S. W. 1088, 44 L. R. A. (N. S.) 597; Trafton v. Davis, 110 Me. 318, 86 A. 179; Scruggins v. Jones, 207 Ky. 636, 269 S. W. 743; Bigelow v. Maine Central R. Co., 110 Me. 105, 85 A. 396, 43 L. R. A. (N. S.) 627; Fleetwood v. Swift & Co., 27 Ga. App. 502, 108 S. E. 909; Walters v. United Grocery Co., 51 Utah, 565, 172 P. 473, L. R. A. 1918E, 519; Dothan Chero-Cola Bottling Co. v. Weeks, 16 Ala. App. 639, 80 So. 734.

■ Coming now to a consideration of the amount of the verdict against the Quaker Oats Company, I have decided that the verdict is excessive. Without a detailed review of the evidence as to the quantum of damage suffered by plaintiff, the permanency of the plaintiff's injuries was not definitely established. I think the verdict is higher than usually returned in this court and the local state courts in cases where injuries similar in character are shown by the proof, and that it would be an injustice to the defendant to allow it to re-

main at the figure fixed by the jury. I shall therefore require a remittitur of $4,000 by plaintiff as a condition to permitting judgment to stand.

Let an order be entered sustaining the motion as to defendant Kroger Grocery & Baking Company, and overruling it as to the defendant Quaker Oats Company on condition that plaintiff shall within ten days consent to a reduction of the verdict to $6,000, otherwise the motion as to this defendant also be sustained.