## Mary Chisholm *vs.* S. S. Kresge Company.

### December 27, 1935.

Present: Moss, Capotosto, Baker, and Condon, JJ.

Condon, J.   The plaintiff in this case was injured by swallowing two small pieces of wire concealed in an order of beef stew, bread and coleslaw which she had purchased and was eating at defendant's lunch counter.  A third piece of wire was taken from her mouth with some food by the plaintiff, after which she immediately became sick, started to choke and spit blood.  The pieces swallowed were located by X-ray examination in the plaintiff's stomach, where they remained for a considerable time, one piece for a much longer time than the other.  During that period and for a long time thereafter she suffered great pain and was under almost continuous medical care, unable to follow her regular

employment. For such injuries she brought this action of trespass on the case against the defendant for negligence. On the trial in the superior court before a jury, she was awarded damages of $5,500. This verdict was approved by the trial justice in denying the defendant's motion for a new trial.

The case is here on the defendant's exceptions, (1) to the trial court's refusal to direct a verdict in defendant's favor, (2) to the denial of defendant's motion for a new trial and (3) to the court's instruction to the jury as stated, not quite accurately, in the bill of exceptions that "an inference of negligence on the part of the defendant arises upon plaintiff showing wire in the food."

We shall consider the third exception first. Purveyors of food are required to exercise reasonable care so that foreign substances injurious to the human system do not get into food which they offer to their customers. In the ordinary and usual course, the public reasonably expect to find the food sold to them to be free of such substances. It is most unusual and extraordinary to find not one but several pieces of wire in food if such food is prepared with care. Therefore in a case like the present one the presence of such wire indicates negligence somewhere along the line in the course of the preparation of that food or in the handling of the same after it has been prepared and before it is served to the customer. An inference of negligence may reasonably be drawn by the jury under circumstances such as appear from the evidence here, and it is for them to say whether these circumstances are sufficiently strong to prove negligence.

The trial justice said that the facts proved by the plaintiff would form "the basis for a logical inference" that the defendant was negligent and that such an inference was for them to draw if they believed the plaintiff's testimony as to the presence of these wires in the food. It is true that he did say that "if she stopped there and no evidence were put in, then that inference would be strong enough so that you would have to decide in favor of the plaintiff." This

was not an accurate statement but it could not have misled the jury. It applied to a different situation where the defendant had not put in any evidence of due care as it did here, and the trial justice immediately added: "That, however, is only an inference." Moreover, he went on and amplified his statement in such a way as to make it clear beyond any doubt that it was for the jury to draw the inference if they thought it justified from the evidence, and concluded this part of the charge in these words: "Now perhaps the real question for the jury is whether the facts disclosed to you by the evidence in this case afford just ground for a reasonable inference that according to ordinary experience these pieces in the coleslaw, would not have gotten there except for the want of due care of the defendant, or of someone for whose conduct the defendant was responsible in the preparation or the service of this food." He had already said that they were at liberty to draw an inference from the testimony of the defendant's witnesses that, notwithstanding the finding of the wires in the food, it was not guilty of negligence.

In a case of this kind it is the province of the trial justice to determine whether or not there is evidence in the case from which inferences may be fairly drawn either for the plaintiff or for the defendant. Such inferences are inferences of fact based on logical reasoning, and they are for the jury to draw. The court has performed its duty when it has found that the evidence is such as to furnish the jury a basis for such reasoning. That is what the trial justice did in this case and his action in this respect was not different from the action of the trial justice in *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43, which was approved by this court.

We think the evidence in the instant case is such as to warrant the inference that defendant was negligent, and the trial justice did not prejudice the rights of the defendant in the manner in which he charged the jury with reference thereto, if we consider other parts of his charge in addition to the brief excerpt set out in the defendant's exception.

The jury was recalled by the trial justice to clear up some doubt raised by the defendant's counsel that the charge as given put the duty of showing due care on the defendant. Again the trial justice, after making the law clear to the jury on this point, went on to elucidate the duty of burden of proof in the following words: "If the defendant establishes by proof, if the defendant proves— and it is for you to determine the weight and the sufficiency of the proof and whether the defendant has established that point or not—if the defendant has proven to you by the evidence that it exercised the care customarily employed by others engaged in like business, then that evidence would furnish the basis for a logical inference that the defendant was not negligent. And so I say, in the absence of any other testimony, you would have to weigh these inferences and determine which of them is the stronger. If the plaintiff's inference were stronger, and there was no other testimony except the presence of the wire in that food, on the one hand, and the customary care employed by the defendant on the other hand, you would have to determine which of these inferences was the stronger. And if they were equal in value as proof, the plaintiff would not be entitled to recover and your verdict should be for the defendant." This added language cured any possible defects in the charge as previously given and fully protected all the rights of the defendant.

In support of its first exception, defendant claims that at the conclusion of the testimony the state of the evidence was such that there was nothing upon which the jury could base a finding of negligence, except mere conjecture. It contends that, because the plaintiff offered no testimony as to where the wires actually came from and the defendant had shown that it had used the care ordinarily exercised by careful and prudent purveyors of food, the jury could not assume because of the presence of the wires in the food that the defendant was negligent. A careful reading of the record leads us to conclude that the situation at that stage

of the trial was not as simple as defendant argues. There was testimony on the part of the plaintiff as to the carrying of the food to the serving tables from the basement, where it was prepared, and as to the manner in which it was taken from the serving tables and served to customers.

These circumstances could reasonably lead the jury to infer that the wires got into the food in the course of its preparation and delivery by the defendant and in consequence of its negligence. In view of the actual existence of three pieces of wire in the food when served to the plaintiff and the other evidence in the case, it was clearly a question for the jury whether the defendant was as careful as it claimed to have been in the service and preparation of this food.

On a motion for direction of a verdict, the court is not at liberty to weigh the evidence or pass upon the credibility of the witnesses. Only where there is but one inference to be drawn from the facts should the court direct a verdict. *Minutilla* v. *Providence Ice Cream Co., supra.* In that case, this court sustained the trial court's refusal to direct a verdict for the defendant, where the evidence offered by the plaintiff was the finding of several small pieces of glass in the middle of an order of ice cream, two pieces of which had entered the plaintiff's stomach, and the testimony of the defendant showed the utmost care in the preparation and straining of the ingredients for making its ice cream. While the court said that this testimony on the defendant's part laid the basis for a logical inference that it was not negligent, it went on to say: "If the care commonly used by defendant had been exercised the presence of these pieces of glass in the cream sold to the plaintiff would have been impossible. Yet the fact remains that there they were with no circumstance to warrant an inference of negligence on the part of anyone other than defendant."

Defendant appears to rely largely on the case of *Ash* v. *Childs Dining Hall Co.*, 231 Mass. 86, 120 N. E. 396, decided in 1918, in support of its contention that recovery can be

had, in a case of this kind, only when the plaintiff produces actual evidence of the defendant's negligence in permitting the foreign substance to get into the food or when reasonable inspection on the part of the defendant would have disclosed the foreign substance irrespective of whether it got into the food through the defendant's negligence or otherwise. In that case a very small black, flat-headed tack, a little longer than a carpet tack, was found in some blueberries in a pie served to a customer by the defendant. It is significant that the tack was so small and its color and shape such, according to the opinion of the court, that it might have become imbedded in a blueberry and so escaped the most careful scrutiny. Those facts seem to have impressed the court and to have contributed considerably to the position which the court took on the whole case. Certain it is that the decision went far in holding the plaintiff to a degree of proof that was in the very nature of the case impossible to attain.

In *Minutilla* v. *Providence Ice Cream Co., supra,* this court declined to follow *Ash* v. *Childs Dining Hall Co., supra,* and commented on the adverse criticism made of that case by a distinguished authority on the law of evidence.

In *Sullivan* v. *Manhattan Market Co.,* 251 Mass. 395, decided in 1925, the plaintiffs, who had purchased a pie from the defendant, sued in tort for personal injuries resulting from eating the pie, which contained the dead and decomposed body of a mouse. The refusal of the trial justice to permit their case to go to the jury was held to be error. The defendant company baked the pie and showed by testimony that it had carefully prepared the crusts for the pie but that the filling came from a reputable concern long established in that business. This filling came in pails with the tops nailed down and the pails were kept in a storeroom and then used to fill the pies by bakers working under electric light. No inspection of the filling was made before putting it in the pies. The reason the court gives for its decision is as follows: "The defendant

was a manufacturer of a part of the pie and for that reason was responsible for the finished product. The tendency of courts is to hold the manufacturer of food to a high degree of care because of the serious consequences to human life likely to follow his negligence." In that case, plaintiffs merely proved the presence of the foreign substance in the pie and the resulting injury. That was sufficient to put the defendant to its proof of reasonable care, apparently because, as a baker of the pie, it was a manufacturer. In the *Ash* case, the defendant also baked the pie and in addition served it as food. Did the serving of it as food in the role of an innkeeper relieve it of its responsibility in baking it in the role of manufacturer? This would seem to be the only possible distinction between these two cases, and it does not seem sound to us.

In the instant case, the beef stew and the coleslaw were prepared by the defendant with ingredients supplied by others. It is true that the defendant's testimony set forth the care which it took in the preparation of the food and it also showed the possibility that the wires got into some of the ingredients before the defendant received those ingredients, and were concealed in them in such a manner that reasonable care in inspecting those ingredients would not disclose the presence of the wires. However, there was testimony from which the jury could reasonably infer that the wires were in the coleslaw. The defendant introduced considerable testimony tending to prove that it had used all reasonable care as to the bread and the ingredients of the beef stew, but there was little, if any, similar testimony as to the coleslaw. In spite of this state of the evidence, the defendant contends that the cause of the injury was left to conjecture. We do not agree. The negligence of the defendant is fairly inferable from the presence of the wires in the food and the other testimony in the case. The jury, therefore, had the right to draw such an inference.

Defendant's counsel makes much of the fact that the plaintiff did not offer any testimony to show where the

wires came from. He contends that the plaintiff's proof does not sufficiently exclude other possible causes of the presence of wires in the food to warrant an inference of negligence on the part of the defendant, and that *Minutilla* v. *Providence Ice Cream Co., supra*, therefore, could not be relied on by the plaintiff. We think the record supports an opposite conclusion. On the trial the plaintiff introduced testimony to the effect that the containers from which the food was served were uncovered; that some of the food was prepared in a basement kitchen on the premises by a woman whose duty it also was to clean around them, and who, though still in the defendant's employ at the time of the trial, was not produced as a witness; that the food was delivered to the lunch counter from the basement in uncovered containers on a dumb waiter; that a bus boy, who also collected the soiled dishes, removed the food from the dumb waiter to the steam table at the lunch counter, and that the girls who served the food also did cleaning work at the sinks of the lunch counter.

Clearly the opportunity was present for foreign substances to get into the food while it was being prepared and afterwards. In view of that opportunity, it was, in our opinion, a question for the jury to decide whether the evidence introduced by the defendant to show due care on its part was such as to raise a strong enough inference of such care to at least equal an inference of negligence by the defendant drawn by the jury from the evidence for the plaintiff. The jury was entitled to weigh all the evidence and decide whether or not the defendant had done all that it claimed to have done to.guard the food from the intrusion of foreign substances and whether or not all that it had done for that purpose constituted reasonable care under all the circumstances. The testimony introduced by the parties was such as to make inevitable the raising of issues of fact to be determined by the drawing of inferences from that testimony. The trial justice called it a "battle of inferences," and the characterization is apt. In thus

declining to invade the province of the jury and to direct a verdict for the defendant, he did not err.

The defendant contends under its second exception that the trial justice should have granted its motion for a new trial on the ground that the verdict of the jury was against the law and the evidence and the weight thereof, and because the damages awarded the plaintiff are excessive. In his decision denying the defendant's motion the trial justice said that the jury's verdict on the question of liability was warranted and that he felt they might reasonably reach the decision they did. He went even further and stated expressly that, were he sitting without a jury, he would probably feel the same way as the jury did on the question of liability. Our examination of the transcript does not lead us to the conclusion that his judgment in this respect was clearly wrong and therefore under our decisions there is no ground for a reversal.

On the question of damages also, the trial justice came to the conclusion that he was not justified in disturbing the verdict. The plaintiff was awarded $5,500, which in our opinion is generous and perhaps more than we would have awarded her. But are they excessive in the sense that they are unjust to the defendant and more than what is reasonably compensatory of the plaintiff's injuries? The trial justice has carefully considered this question and has frankly stated in his decision that he believes that they are ample and that probably he would have given less were he sitting without a jury. Yet he says that, having seen the plaintiff on the stand and having considered the uncontradicted medical testimony in her behalf, he does not believe that any possible difference between him and the jury in this respect would justify him in finding the damages excessive. In his decision he reviews the testimony as to the injuries suffered by the plaintiff and points out that she had swallowed at least two of the pieces of wire almost an inch in length, which remained in her intestinal tract a very considerable period of time; that her weight had suddenly

gone down over thirty pounds shortly following the accident; that a few weeks before the trial she was still sixteen pounds underweight; and that she was then pale, thin and sickly looking, rather anemic in appearance. On the whole he thought the jury were fairly entitled from the evidence to compare her condition of health before the accident with her condition after the accident. He stated also that she must have undergone a good deal of pain and suffering. Her monetary loss up to the time of the trial was admitted to be $1,000. We cannot determine what part of the verdict could properly be charged to pain and suffering, nor what smaller amount would, more fairly to the defendant, justly compensate the plaintiff than the amount awarded by the jury. We may add that defendant's evidence furnished the trial justice practically no aid in the performance of this part of his duty, and we are confronted with the same difficulty.

As we have frequently said, the trial justice has a considerable advantage over us in weighing the evidence and passing upon the credibility of the witnesses. Especially is this advantage of great importance on a question of damages in an action for personal injuries where the injured plaintiff is a witness. At the time of the trial the trial justice observed the plaintiff and noted her appearance in the light of the uncontradicted medical testimony as to her injuries and the severity and extent of them. Therefore, under all the circumstances here, where it clearly appears to us that the trial justice has properly performed his duty in passing upon the reasonableness of the damages, his decision is entitled to great weight. We should not disturb it on the ground that the damages are excessive, unless we are convinced that the damages are not compensatory but rather vindictive or punitive, or that they are so grossly excessive as to clearly indicate that the jury were actuated by sympathy or prejudice or other improper influences. The amount awarded here is not such as to raise that conviction in our minds and, therefore, we find that the

trial justice did not err in refusing to grant the defendant's motion for a new trial on the grounds set forth in its bill of exceptions.

All defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*William S. Flynn*, for plaintiff.

*John M. Morrison, George Paul Slade, Paul R. McIntyre, Greenough, Lyman & Cross*, for defendant.