## SWIFT & CO. v. BLACKWELL.
### No. 3990.

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

Malcolm K. Harris, of Danville, Va. (Harris, Harvey & Brown, of Danville, Va., on the brief), for appellant.

John W. Carter, Jr., of Danville, Va. (Taylor & Broaddus, of Martinsville, Va., and Carter & Williams, of Danville, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The plaintiff in the District Court obtained a judgment for $1,500 in a suit for damages suffered when he accidentally swallowed fragments of broken glass said to have been contained in a sealed can of condensed or evaporated milk bearing the label of the defendant company. A motion for a directed verdict was made by the defendant on the grounds that the evidence conclusively showed (1) that the goods were manufactured and packed under the best possible conditions and without negligence, and (2) that Swift & Co. was not the manufacturer of the goods, and had no privity of contract with the plaintiff. The motion was denied, and this ruling is the basis for this appeal.

With regard to the first point, there is not much room for argument. It is true that the evidence of the defendant indicates that the product was manufactured under the most particular and scrupulous conditions to insure its sanitation and protection from all foreign substance, and the opinion was vouchsafed by the general manager of the manufacturer that there was no possibility of glass having gotten into the product because the milk was strained many times during the process of manufacture. The evidence on behalf of the plaintiff, on the other hand, indicated very strongly that the glass found its way into the can before it was closed. Plaintiff's witnesses showed that he bought six cans of milk from a retailer, who in turn purchased it from Swift & Co.; that he opened the can in question with his pocketknife in the presence of his wife and a neighbor, in order that his wife might give some of it to their baby; that she poured a part of the milk into a glass jar and left the open can on the table, and that from this can plaintiff poured some of the milk into his cup of coffee; that the plaintiff then ate his dinner and afterwards drank his coffee, and with the last swallow, felt some foreign substance going down his throat; that he went to the door and spat up some blood, and then examined the can and found 25 or more pieces of glass within it. All of this was done in the presence of the neighbor, who testified that nobody put anything into the can after the plaintiff opened it. The neighbor summoned a physician, who arrived within a half hour and was told of the plaintiff's experience. This physician and others testified that an ulcerated condition of the plaintiff's stomach which developed could have been caused by the swallowing of glass.

In view of this testimony, it was not error on the part of the District Judge to submit to the jury the question whether the glass was in the can when it was sealed in the factory or was put into the can after it was opened in the plaintiff's home. The judge correctly told the jury that in order to find a verdict for the plaintiff, they must be satisfied that the defendant was negligent; that the presence of glass in the milk when the can was opened was itself prima facie evidence of negligence, but it was not conclusive; and that the jury must consider the evidence of the defendant as to the care with which the product was prepared as well as the evidence of the plaintiff as to how the glass was found, and should not decide the point in the plaintiff's favor unless satisfied as to the truth of his recital by a preponderance of the evidence.

The defendant admits that if it is proved unequivocally that a foreign substance was discovered in a can of food at the moment that it was opened, an inference of negligence may properly be drawn; but it is said that when a period of time elapses between the opening of the can and the finding of the foreign substance, the presumption of negligence disappears, unless all doubt as to whether the substance was in the can when opened is eliminated. See Bourcheix v. Willow Brook Dairy, 268 N.Y. 1, 196 N.E. 617, 98 A.L.R. 1492. Even this test is met in the pending case; for the evidence of the plaintiff, if credited by the jury, proved conclusively that nothing was put into the can between its open-

ing and the discovery of the glass. Campbell Soup Co. v. Davis, 163 Va. 89, 175 S.E. 743; Chevy Chase Dairy v. Mullineaux, 63 App.D.C. 259, 71 F.(2d) 982.

▪ The more significant point is made that Swift & Co. is not responsible for the injury because it did not manufacture the product and had no direct contact or privity with the plaintiff. It was established that the goods were manufactured by Libby, McNeill & Libby, reliable manufacturers, for Swift & Co., and sold by the latter to a retailer, who in turn sold them to the plaintiff. Swift's connection with the goods, however, was advertised by the phraseology of the label which surrounded the can. On the front panel and again on the back panel, which together covered five-sevenths of the cylinder, the following language appeared: "Swift's Sterilized Evaporated Milk, Quality of Swift's Premium, Accepted American Medical Association," the word "Swift's" being printed in bold type. Scattered over the face of each of these spaces was the word "Swift" repeated eight times. On one narrow side panel appeared the words "Swift & Company" and in smaller type below, the word "Distributors"; also the words, "General Offices, Chicago, Made in U. S. A." In the same panel were directions for dilution. On the other side panel occurred the word "Guaranty" and below it in small type the words "Swift's Evaporated Milk Is Pure Cow's Milk Reduced by Evaporation," and directions for the addition of water.

The contention is that in the absence of misrepresentation or of negligence in the selection of the goods, an intermediate distributor is liable to a customer only for defects discoverable upon reasonable inspection, unless he has represented that he was the actual manufacturer; and it is argued that Swift & Co. has no liability here because the sealed can did not permit inspection, and the label showed that it was not the manufacturer but merely the distributor of the goods. But in our opinion, the average reader would certainly conclude from a perusal of the label that the goods in the can were the product of Swift & Co. True the word "Distributors" appears on one of the side panels, but it is printed in type quite small when compared with the word "Swift's" elsewhere displayed, and the advertisement as a whole emphasizes Swift & Co.'s connection with the goods and suggests the thought that the origin of the goods from such a source was a guaranty of high quality. The District Judge was therefore justified in his instruction to the jury that although the goods were not packed by Swift & Co., still they were put out under the Swift name and held out to the public as its product, and hence it had the responsibility of a manufacturer.

The applicable rule of law, supported by the weight of authority, is set out in the Restatement of the Law of Torts, vol. 2, § 400, as follows:

"c. One who puts out as his own product chattels made by others is under a duty to exercise care, proportionate to the danger involved in the use of the chattels if improperly made, to secure the adoption of a proper formula or plan and the use of safe materials and to inspect the chattel when made. But he does not escape liability by so doing. By putting a chattel out as his own product, he causes it to be used in reliance upon his care in making it. Therefore, he is liable if, because of some negligence in its fabrication or through lack of proper inspection during the process of manufacture, the article is in a dangerous defective condition which the vendor could not discover after it was delivered to him.

"d. The rule stated in this Section applies only where the chattel is so put out as to lead those who use it to believe that it is the product of him who puts it out. The fact that the chattel is sold under the name of the person selling it may be sufficient to induce such a belief, but this is not always so, as where the goods are marked as made for the seller, without stating the name of the maker, or where the seller is known to carry out only a retail business."

See Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 90 A.L.R. 1260; Swift & Co. v. Hawkins (Miss.) 164 So. 231; Slavin v. Francis H. Leggett & Co., 173 A. 597, 12 N.J.Misc. 549; Id., 114 N.J. Law, 421, 177 A. 120. Compare Fleetwood v. Swift & Co., 27 Ga.App. 502, 108 S.E. 909.

Affirmed.