### QUINN et al. v. SWIFT & CO.

No. 3896.

District Court, M. D. Pennsylvania.

Aug. 6, 1937.

Carlon M. O'Malley and John W. Bour, both of Scranton, Pa., for plaintiffs.

Welles, Munford, Stark & McGrath, of Scranton, Pa., for defendant.

JOHNSON, District Judge.

This is an action in trespass by Virginia Quinn and her husband to recover damages resulting from defendant's alleged negligence in manufacturing country sausage containing particles of metal. The case was tried before the court and a jury and a verdict was rendered for the plaintiffs; $360 for Virginia Quinn and $200 for her husband, Edgar Quinn. The case is now before the court on a motion for a new trial and on a point reserved upon a motion for binding instructions in favor of the defendant.

At the trial plaintiffs introduced evidence to show that the plaintiff Virginia Quinn became ill as a result of eating sausage containing pieces of sharp metal; that the sausage was manufactured by the defendant and encased in unbroken skins; and that the pieces of metal did not get into the sausage while it was in possession of the plaintiffs. The defendant then introduced evidence to show the care with which it manufactured sausage; that the machinery used was in good condition and constantly inspected; that of the ingredients used to manufacture the sausage, the meat alone was prepared by the defendant and the remaining ingredients, consisting of salt, sugar, pepper, and nutmeg were purchased from reputable dealers; that these ingredients were inspected by the defendant, but that no pieces of metal were found therein.

At the conclusion of the testimony, the defendant moved for binding instructions on the ground that plaintiffs did not rebut defendant's evidence and therefore did not show that the sole cause from which the foreign substances arose was attributable exclusively to the defendant. The court reserved decision on this motion and submitted the case to the jury under the res ipsa loquitur doctrine, following the cases of Swift & Company v. Blackwell (C.C.A.) 84 F.(2d) 130, and Linker v. Quaker Oats Co. (D.C.) 11 F.Supp. 794.

The defendant relies on two decisions of this circuit in support of its position that binding instructions should have been given. In the first case, Horn & Hardart Baking Co. v. Lieber (C.C.A.1928) 25 F.(2d) 449, 450, where plaintiff was injured by a tack which was in strawberries served her by defendant's restaurant, it was held that the injury itself was not evidence of defendant's negligence. In the second case, Nichols v. Continental Baking Co. (C.C.A.1929) 34 F. (2d) 141, the plaintiff showed she was injured as a result of biting into a piece of bread containing a cockroach. The defendant's evidence showed that the ingredients used in making the bread were bought from reputable firms and were inspected by defendant. The court, citing the Horn & Hardart Case, held that binding instructions were proper because to hold the defendant guilty of negligence would have been "to base a verdict on speculation instead of the solid basis of proven negligence."

In the Horn & Hardart Case, the following cases were cited to support the rule that the injury itself was not evidence of defendant's negligence: Ash v. Childs Co. (1918) 231 Mass. 86, 120 N.E. 396, 4 A.L.R. 1556; Crocker v. Baltimore Co. (1913) 214 Mass. 177, 100 N.E. 1078, Ann.Cas.1914B, 884; Valeri v. Pullman Co. (D.C.1914) 218 F. 519, 522; Roseberry v. Wachter, 3 W.W. Harr.(Del.) 253, 138 A. 273; Sheffer v. Willoughby (1896) 163 Ill. 518, 45 N.E. 253, 34 L.R.A. 464, 54 Am.St.Rep. 483. However, later cases in some of the jurisdictions cited applied the res ipsa loquitur doctrine. In Tonsman v. Greenglass, 248 Mass. 275, 142 N.E. 756, where a piece of iron was imbedded in a loaf of bread it was held that the jury could infer that it got into the bread during the process of manufacture. In Sullivan v. Manhattan Co., 251 Mass. 395, 146 N.E. 673, where a mouse was found in filling between the crusts of raisin pie, it was held that the jury could have found that the mouse was in the filling when the crust was placed in the pie. In Rost v. Kee & C. Dairy Co., 216 Ill.App. 497, it was held that evidence that a bottle of milk contained bits

of broken glass was sufficient to show that somewhere between cleaning and final delivery defendant was guilty of negligence. The cited case of Valeri v. Pullman Co., supra, did not involve the doctrine of res ipsa loquitur. The question there was whether a restaurant keeper was an absolute insurer of food.

The great weight of authority is to the effect that a presumption of negligence arises, or the jury may infer negligence, from the presence of a foreign substance in food. The question is annotated in 4 A.L.R. 1559; 47 A.L.R. 148; 105 A.L.R. 1039. From the annotation it appears that eighteen state courts and three federal courts apply the doctrine of the presumption of negligence; that two state courts and one federal do not; and that in Massachusetts, Georgia, New York, and Tennessee there are cases on both sides of the question.

The cases applying the doctrine are: Bellingrath v. Anderson (1919) 203 Ala. 62, 82 So. 22; Coca-Cola Bottling Co. v. Barksdale (1920) 17 Ala.App. 606, 88 So. 36; Whistle Bottling Co. v. Searson (1922) 207 Ala. 387, 92 So. 657; Franklin v. Argyro (1924) 211 Ala. 506, 100 So. 811; Collins Baking Co. v. Savage (1933) 227 Ala. 408, 150 So. 336; Reichert Mill. Co. v. George (1934) 230 Ala. 3, 162 So. 393; Eisenbeiss v. Payne (1933) 42 Ariz. 262, 25 P.(2d) 162; Heinemann v. Barfield (1918) 136 Ark. 456, 207 S.W. 58; Drury v. Armour & Co. (1919) 140 Ark. 371, 216 S.W. 40; Coca-Cola Bottling Co. v. McBride (1929) 180 Ark. 193, 20 S.W.(2d) 862; Coca-Cola Bottling Co. v. Bennett (1931) 184 Ark. 329, 42 S.W.(2d) 213; Mix v. Ingersoll Candy Co. (Cal.App. 1935) 49 P.(2d) 877; Gross v. Loft, Inc. (1936) 121 Conn. 394, 185 A. 80; Watson v. Augusta Brewing Co. (1905) 124 Ga. 121, 52 S.E. 152, 1 L.R.A.(N.S.) 1178, 110 Am.St. Rep. 157; Martin v. Waycross Coca-Cola Bottling Co. (1916) 18 Ga.App. 226, 89 S. E. 495; Bradfield v. Atlanta Coca-Cola Bottling Co. (1920) 24 Ga.App. 657, 101 S. E. 776; Atlanta Coca-Cola Bottling Co. v. Shipp (1930) 41 Ga.App. 705, 154 S.E. 385; Atlanta Coca-Cola Bottling Co. v. Dean (1931) 43 Ga.App. 682, 160 S.E. 105; Atlanta Coca-Cola Bottling Co. v. Sinyard (1932) 45 Ga.App. 272, 164 S.E. 231; Coleman v. Dublin Coca-Cola Bottling Co. (1933) 47 Ga.App. 369, 170 S.E. 549; Gainesville Coca-Cola Bottling Co. v. Stewart (1935) 51 Ga.App. 102, 179 S.E. 734; Rost v. Kee & C. Dairy Co. (1920) 216 Ill.App. 497; Davis v. Van Camp Packing

Co. (1920) 189 Iowa, 775, 176 N.W. 382, 17 A.L.R. 649; Nehi Bottling Co. v. Thomas (1930) 236 Ky. 684, 33 S.W.(2d) 701; Liggett & Myers Tobacco Co. v. Rankin (1932) 246 Ky. 65, 54 S.W.(2d) 612; Kroger Grocery Co. v. Schneider (1933) 249 Ky. 261, 60 S.W.(2d) 594; Goldman & F. Bottling Co. v. Sindell (1922) 140 Md. 488, 117 A. 866; Ward v. Great A. & P. Co. (1918) 231 Mass. 90, 120 N.E. 225, 5 A.L.R. 242; Tonsman v. Greenglass (1924) 248 Mass. 275, 142 N.E. 756; Richenbacher v. California Packing Corporation (1924) 250 Mass. 198, 145 N.E. 281; Sullivan v. Manhattan Market Co. (1925) 251 Mass. 395, 146 N.E. 673; Doyle v. Continental Baking Co. (1928) 262 Mass. 516, 160 N.E. 325; Hertzler v. Manshum (1924) 228 Mich. 416, 200 N.W. 155; Jackson Coca Cola Bottling Co. v. Chapman (1914) 106 Miss. 864, 64 So. 791; Pillars v. R. J. Reynolds Tobacco Co. (1918) 117 Miss. 490, 78 So. 365; Jackson Coca-Cola Bottling Co. v. Renna (Miss.1923) 97 So. 674; R. J. Reynolds Tobacco Co. v. Loftin (Miss.1924) 99 So. 13; Jackson Coca-Cola Bottling Co. v. Grubbs (1926) 143 Miss. 590, 108 So. 732; Kenney v. Wong Len (1925) 81 N.H. 427, 128 A. 343; DeGroat v. Ward Baking Co. (1925) 102 N.J. Law, 188, 130 A. 540; Rudolph v. Coca-Cola Bottling Co. (1926) 132 A. 508, 4 N.J.Misc. 318; Sheehan v. Menkes (1930) 152 A. 326, 8 N.J.Misc. 867; Corin v. S. S. Kresge Co. (1933) 110 N.J.Law, 378, 166 A. 291; Freeman v. Schultz Bread Co. (1916) 100 Misc. 528, 163 N.Y.S. 396; Rosenswaike v. Interborough Rapid Transit Co. (Sup.1919) 175 N.Y.S. 828; Chysky v. Drake Bros. Co. (1920) 192 App.Div. 186, 182 N.Y.S. 459; Carroll v. N. Y. Pie Baking Co. (1926) 215 App.Div. 240, 213 N.Y.S. 553; Cohen v. Dugan Bros. (1928) 132 Misc. 896, 230 N.Y.S. 743; Miller v. National Bread Co. (1936) 247 App.Div. 88, 286 N.Y.S. 908; Ward Baking Co. v. Trizzino (1928) 27 Ohio App. 475, 161 N.E. 557; Rozumailski v. Philadelphia Coca-Cola Bottling Co. (1929) 296 Pa. 114, 145 A. 700; Nock v. Coca-Cola Bottling Works (1931) 102 Pa.Super. 515, 156 A. 537; Madden v. Great A. & P. Tea Co. (1932) 106 Pa.Super. 474, 162 A. 687; Koplin v. Louis K. Liggett Co. (1935) 119 Pa. Super. 529, 181 A. 381; Campbell v. G. C. Murphy Co. (1936) 122 Pa.Super. 342, 186 A. 269; Minutilla v. Providence Ice Cream Co. (1929) 50 R.I. 43, 144 A. 884, 63 A.L. R. 334; Chisholm v. S. S. Kresge Co. (1935) 55 R.I. 422, 182 A. 4; Boyd v. Coca-Cola Bottling Works (1915) 132 Tenn. 23, 177

S.W. 80; Crigger v. Coca-Cola Bottling Co. (1915) 132 Tenn. 545, 179 S.W. 155, L.R.A. 1916B, 877, Ann.Cas.1917B, 572; Dunn v. Texas Coca-Cola Bottling Co. (Tex.Civ. App.1935) 84 S.W.(2d) 545; Campbell Soup Co. v. Davis (1934) 163 Va. 89, 175 S.E. 743; Linker v. Quaker Oats Co. et al. (D. C.N.D.Okl.1935) 11 F.Supp. 794; Picard v. Smith (1930) 59 App.D.C. 291, 40 F.(2d) 803; Chevy Chase Dairy, Inc., v. Mullineaux (1934) 63 App.D.C. 259, 71 F.(2d) 982; Swift & Co. v. Blackwell (C.C.A. 4, 1936) 84 F.(2d) 130; Fisher v. Washington Coca-Cola Bottling Works, Inc. (1936) 66 App.D. C. 7, 84 F.(2d) 261, 105 A.L.R. 1034.

The Pennsylvania cases above cited, decided after the two cases relied upon by the defendant, all apply the res ipsa loquitur doctrine. The case of Rozumailski v. Philadelphia Coca-Cola Bottling Co. supra, decided by the Supreme Court of Pennsylvania, answers defendant's contention that binding instructions should have been given because plaintiffs failed to show that the injury was exclusively attributable to the defendant. The court said (296 Pa. 114, at pages 118, 119, 145 A. 700, 701): "The manufacturer was for all purposes in exclusive control of the bottle and its contents, as its contents were undisturbed until it reached the consumer's hands. It is a case where the accident proves its own negligent cause, and the jury would be permitted to infer negligence, as the court below instructed it, from the fact that ground glass had been found in the bottom of the bottle. The particular dereliction is not shown, nor was it necessary; the negligent act is demonstrated by showing glass in the bottom of the bottle. * * *

"Defendant submitted evidence of the use of the most approved appliances to prevent foreign substances from entering the bottle, but whether these devices did in fact prevent such substances from entering, or whether the servants of the defendant were careless in the use of these devices, thus permitting the entry of foreign matter, was for the jury to consider in the light of the evidence that glass was actually found in the bottle. * * *

"Defendant further urges that plaintiff's case furnishes other causes which, with equal show, were productive of the injury, and accounted for the presence of glass in plaintiff's mouth and stomach. The dealer prepared the sandwiches which were eaten by the customer. The glass could have been in them. But the dealer examined the part uneaten, and did not find any glass. This circumstance would not give rise to such a contributing cause that the court could hold, as a matter of law, precluded a recovery. If there was any other cause to which the injury might in equal fairness be attributed, the jury ought not to be permitted to guess which occasioned the injury. Strobel v. Park, supra, 292 Pa. 200, 207, 140 A. 877 [57 A.L.R. 253]. But, as said in this last case, the test is whether the circumstances are such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant. The testimony need not exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the injury. Gallivan v. Wark Co., 288 Pa. 443, 456, 136 A. 223."

The doctrine expressed in Rozumailski v. Philadelphia Coca-Cola Co., 296 Pa. 114, 145 A. 700, is supported by the clear weight of authority; text-books; the other Pennsylvania cases, federal cases, and the decided cases of the other states, cited above.

In 26 C.J. on page 785, the liability of a manufacturer of food products to a consumer is stated as follows: "Although differing in their reasoning, it is generally agreed by the authorities that a manufacturer, packer or bottler of food or beverages is directly liable to a consumer for an injury caused by the unwholesomeness or the unfitness of such articles, although purchased from a dealer or middleman and not from such manufacturer, bottler or packer. And a manufacturer of food products has been held liable for injuries to one who did not buy the food from the manufacturer or from a dealer to whom the manufacturer had sold it, but who nevertheless had partaken of it and been injured thereby. In some of these decisions the doctrine of implied warranty has been assigned as a ground for such liability, but in others liability is based upon the ground of negligence, the applicability of the rule of implied warranty being denied."

In Nock v. Coca-Cola Bottling Works of Pittsburgh, 102 Pa.Super. 515, 156 A. 537, where plaintiff found a worm in a bottle of Coca-Cola, it was held that, "A manufacturer may not ordinarily be liable to those with whom he has no contractual relation, but if he puts goods upon the market in a bottle or original package, he, in effect, represents to each purchaser that the contents thereof are wholesome and suitable for the purpose for which they are sold, and the common

law doctrine of caveat emptor does not prevail. The purchaser has the right to rely upon the assurance of the manufacturer that the contents are fit and wholesome, and it is only just and reasonable to hold him responsible;" and "that it is a question for the jury to determine whether or not the presence of foreign matter resulted from the negligence of the defendant."

In Madden et ux. v. Great A. & P. Tea Co., 106 Pa.Super. 474, 162 A. 687, where plaintiff became ill as a result of drinking tea taken from a box in which a mouse was found, the court held that, "Those engaging in the business of manufacturing or compounding food or beverages for consumption must use a high degree of care to see that the food or beverage is free from foreign or deleterious substances that injuriously affect the user. The question whether such manufacturer used reasonable care in the preparation of the food or beverage is for the jury." In the opinion, 106 Pa.Super. 474, at page 479, 162 A. 687, 689, the court said: "Even though the defendant offered evidence uncontradicted to show that he was not negligent and made reasonable inspection, and there was no direct contradiction thereof, the plaintiff having shown the presence of the mouse in the tea, it remained for the jury to say whether the explanation offered by defendant indicated the use of proper care. Doud v. Hines, 269 Pa. 182, 186, 112 A. 528; Shaughnessy v. Director General, 274 Pa. 413, 416, 118 A. 390, 23 A.L.R. 1211."

In Koplin v. Louis K. Liggett Co., 119 Pa.Super. 529, 181 A. 381, plaintiff while eating in a restaurant noticed a centipede in the spoon, and became nauseated and ill. In the trial of the case binding instructions were given for the defendant for whom a verdict was rendered. In reversing this judgment, Judge Stadtfeld, 119 Pa.Super. 529, on page 531, 181 A. 381, 382, said: "In the disposition of the request for binding instructions in favor of defendant, plaintiff was entitled to have all the evidence and legitimate inferences therefrom considered in the light most favorable to her. Smith v. Standard Steel Car Co., 262 Pa. 550, 106 A. 102; Lelar v. Quaker City Cabs, 108 Pa. Super. 15, 164 A. 105."

In Campbell et al. v. G. C. Murphy Co., 122 Pa.Super. 342, 186 A. 269, 270, where plaintiff became ill as a result of eating a sandwich in defendant's restaurant, it was said, quoting from the case of West v. Katsafanas, 107 Pa.Super.Ct. 118, 162 A. 685, "The law places an obligation upon the seller to see that the articles are fit for the purposes for which they are intended. There can be no doubt, of course, that the food purchased was to be consumed. This places a heavy burden upon the vendor of food; but public policy, as well as public health, demands that great care be exercised by one who has the opportunity of examining and knowing the quality of food sold, which the purchaser may not determine. If the food is unfit for consumption, and damages result therefrom, they ought to be placed, not upon one who has no opportunity of determining its condition, but rather upon the one who has had means of informing himself of the condition of the food"; and that "The circumstances of the present case we believe were sufficient to form the basis for an inference by the jury that the sandwich furnished plaintiff was unwholesome."

In Chevy Chase Dairy, Inc., v. Mullineaux, 63 App.D.C. 259, 71 F.(2d) 982, on page 984, Mr. Justice Hitz of the Court of Appeals of the District of Columbia said: "The trial judge permitted no presumption as to how or when the glass got into the bottle, but told the jury that, if the plaintiff showed by evidence to their satisfaction that he bought the milk in the original bottle, which was later found to contain particles of broken glass, they could take into consideration such evidence in determining the alleged negligence of the defendant.

"He could not have said less and covered his ground.

"For negligence, like other controlling facts, may be inferred from circumstances duly proved, and this instruction correctly states the ground upon which the jury might make this inference in this case, while not in any sense requiring them to make it."

In Swift & Co. v. Blackwell, 84 F.(2d) 130, at page 131, where plaintiff testified that he swallowed broken glass contained in a can of condensed milk, and defendant's evidence showed that the milk was manufactured with the utmost care under conditions in which glass could not possibly enter the milk, Judge Soper of the Circuit Court of Appeals for the Fourth Circuit said: "In view of this testimony, it was not error on the part of the District Judge to submit to the jury the question whether the glass was in the can when it was sealed in the factory or was put into the can after it was opened in the plaintiff's home. The judge correctly told the jury that in order to find a verdict for the plaintiff, they must be satisfied that

the defendant was negligent; that the presence of glass in the milk when the can was opened was itself prima facie evidence of negligence, but it was not conclusive; and that the jury must consider the evidence of the defendant as to the care with which the product was prepared as well as the evidence of the plaintiff as to how the glass was found, and should not decide the point in the plaintiff's favor unless satisfied as to the truth of his recital by a preponderance of the evidence."

In Fisher v. Washington, etc., Works, 66 App.D.C. 7, 84 F.(2d) 261, at page 263, 105 A.L.R. 1034, where plaintiff became ill from drinking a bottle of Coca-Cola containing a mouldy substance, Mr. Justice Stephens of the United States Court of Appeals for the District of Columbia, stated: "It seems to us that the doctrine res ipsa loquitur is applicable to such a situation as is involved in the instant case, and rightly requires the submission of such a case to the jury. That rule, hardly to be better stated than in the literality of its own words, has been explained by this court in Moore v. Clagett, 48 App.D.C. 410, 415, as one which: 'arises in a case where the accident is such that, in the ordinary course of events, it would not have happened except through the negligence of the defendant, and where the facts relating to the accident are peculiarly within his knowledge. In such a case, from the mere happening of the accident, a presumption of negligence arises, which, if not satisfactorily explained by the defendant, authorizes a recovery."

In Linker v. Quaker Oats Co. et al. (D. C.) 11 F.Supp. 794, on page 796, where plaintiff was injured as a result of eating rolled oats containing particles of glass, Kennamer, District Judge, states the law as follows:

"It goes without saying that any food manufacturer intending his product for human consumption should exercise a very high degree of care to see that it is free from any foreign substance which, if swallowed, might cause bodily injury or death to the consumer. Fortunately such care is the usual rule, and the public generally have come to use canned and packaged foodstuff under seal of the manufacturer, without making examination of the contents of the container for deleterious ingredients. And it is a tribute to the efficiency of our food packers that actions like the present one are infrequent. However, in the process of manufacture, the most careful hand may become careless; a moment's inattention may allow some foreign substance of a harmful character to become mixed with the food, and in a large plant with numerous employees there are many opportunities for acts of negligence. The various steps in a system of manufacture, of course, are wholly under the control of the manufacturer. Such control almost excludes any possibility of a sealed food becoming contaminated by the presence in it of foreign substance, by any agency other than the manufacturer.

"In view of the above considerations, it seems only fair to presume that the presence of deleterious substance in a packaged food occurs through some negligent act of omission or commission on the part of the agents of the manufacturer. So, notwithstanding the very strong evidence on the part of the Quaker Oats Company as to the care exercised by it in the manufacture and preparation of rolled oats, which evidence might well have caused a verdict in its favor, I am of the opinion I was correct in submitting the case to the jury as to this defendant."

█ The defendant, in addition to showing that it used proper appliances and that the ingredients used in making the sausage were purchased from reputable dealers, showed that it inspected the ingredients but found no particles of metal therein. This shows that the defendant assumed exclusive control of the ingredients and would tend to rebut a contributory cause arising from sources outside of defendant's control. This evidence would not give rise to a contributing cause that would compel the court, as a matter of law, to give binding instructions. The evidence was for the jury in view of the fact that particles of metal were found in the sausage and could have been found by reasonable inspection. The circumstances were such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant.

█ The reasons for a new trial were that the verdict was excessive, contrary to law, and the weight of evidence, and that the court erred in failing to instruct the jury on certain points. The verdict was small and was supported by the law and the evidence. At the end of the charge the court asked if the parties desired further instructions and no further instructions were requested. Counsel for defendant took no specific exceptions to the charge but only a general exception. The charge to the jury

240

was full and fair, and under the circumstances stated, defendant's reasons for a new trial based on errors in the charge are without merit.

And now, the point reserved on the motion for binding instructions is decided in favor of the plaintiffs and the motion for binding instructions is overruled; the reasons for a new trial are ·dismissed, the motion for a new trial is overruled, and a new trial is refused.